RICHARD A. VAN WAGONER (4690)
NATHAN A. CRANE (10165)
LASHEL SHAW (13862)
SNOW, CHRISTENSEN & MARTINEAU
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 521-9000
Facsimile: (801) 363-0400
rav@scmlaw.com
nac@scmlaw.com
lss@scmlaw.com

*Attorneys for Defendant Matthew A. Baker*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MATTHEW A. BAKER, <br><br> Defendant. | **DECLARATION OF STACI MILLIGAN BAKER** <br><br> Case No. 2:20CR00301 <br><br> Magistrate Judge Cecilia M. Romero |

Staci Milligan, also known as Staci Milligan Baker, first being duly sworn, deposes and states:

1.    I am over the age of 18 years, have personal knowledge of the facts set forth herein, and if called to testify would state the following.

2.    My legal name is Staci Milligan.  I also go by my married named Staci Baker.

3.    Matthew A. Baker and I were married in 2011 and are husband and wife.

DEFENDANT'S EXHIBIT 1
2:20cr00301

4.      We have four children, ages six, twin five-year-olds, and a one-year-old.

5.      Beginning in approximately 2012 or 2013, Matt began experiencing debilitating nerve pain in his extremities which continues to the present. He has sought medical diagnosis and treatment for this pain. The episodes of pain often last several days at a time. Matt has been evaluated and treated by several physicians, including endocrine and thyroid specialists. More recently he has been referred to the Mayo Clinic for additional evaluation and treatment. To date, however, Matt has been unable to make arrangements with the Mayo Clinic because it will require that he spend considerable time at a hospital out of state. Due to this illness, Matt is unable to be employed in a regular 9-5 job. Often his pain is so great that he cannot get out of bed.

6.      I am informed that the United States alleges that Matt was in possession of a dangerous weapon, a decorative sword. I am aware of an antique Turkish bayonet, circa 1917, that I found many years ago as a child and kept. I was storing the rusty bayonet in the basement of the home from which we moved along with Christmas décor and food storage. I never thought of the item as dangerous, no more dangerous than a dull knife used in the kitchen.

7.      I am informed that the United States alleges that Matt was in possession of ammunition. First, after Matt's conviction, he transferred ownership of approximately 20 firearms and all the ammunition in the home to others. Second, I was not aware that Matt is restricted from possessing ammunition, only firearms. Regardless, neither of us has any firearms in our home. I came into possession of the ammunition while Matt was in prison. I put in the ammo in my dresser drawer and in a bag in the basement and forgot about the two small boxes. I have no reason to believe that Matt was aware any ammunition was in the house. A small box of

2

shells was in my dresser drawer and another box was in a bag in the basement. The dresser drawer and the bag in the basement are where I store my personal items.

8.       I own and operate a dog breeding business which has been the primary source of income for our family to pay household bills and other expenses since approximately 2018, and certainly while Matt was incarcerated. I handle all financial aspects of my dog breeding business. Matt was not involved in a fiduciary capacity or position with my business. Matt has been involved in land development, and while he has had holdings with value, he also has substantial outstanding debt to service the properties.

9.       On April 14, 2019, I became the sole member and manager of Sunrise at Spanish Terrace, LLC.

10.       After Matt transferred the membership interest in Sunrise at Spanish Terrace, LLC, to me on April 14, 2019, I applied for and received a new EIN number with the IRS in approximately September 2019 and opened an account at Key Bank with the new EIN number and other relevant documents. *See attached Ex. A.*

11.       On June 8, 2021 Charger Title requested the Certificate of Organization for my entity Sunrise at Spanish Terrace, LLC. I kept the certificates of organization for several entities in a folder in my office. I looked in the folder and found the page for Sunrise at Spanish Terrace, LLC and grabbed it and the page behind it. I did not realize at the time that the certificates of organization in my folder were not collated properly. I recently learned I had inadvertently obtained the first page of Sunrise at Spanish Terrace, LLC's certificate of organization and the second page of my entity BAG1 Funding, LLC's certificate of organization. *See attached Ex. B.*

12.       The inadvertently mixed certificates of organization pages were provided to

Charger Title on June 9, 2021.

13.     I declare under the penalty of perjury that the foregoing is true and correct.

DATED this __28__ day of April, 2022.


Staci Milligan Baker

# EXHIBIT A

 DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI  OH   45999-0023

Date of this notice:  09-18-2019

Employer Identification Number:
84-3086603

Form:  SS-4

Number of this notice:  CP 575 G

SUNRISE AT SPANISH TERRACE LLC
STACI MILLIGAN SOLE MBR
1748 GLENDELL DR
OREM, UT  84058

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.

WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

Thank you for applying for an Employer Identification Number (EIN).  We assigned you
EIN 84-3086603.  This EIN will identify you, your business accounts, tax returns, and
documents, even if you have no employees.  Please keep this notice in your permanent
records.

When filing tax documents, payments, and related correspondence, it is very important
that you use your EIN and complete name and address exactly as shown above.  Any variation
may cause a delay in processing, result in incorrect information in your account, or even
cause you to be assigned more than one EIN.  If the information is not correct as shown
above, please make the correction using the attached tear off stub and return it to us.

A limited liability company (LLC) may file Form 8832, *Entity Classification Election*,
and elect to be classified as an association taxable as a corporation.  If the LLC is
eligible to be treated as a corporation that meets certain tests and it will be electing S
corporation status, it must timely file Form 2553, *Election by a Small Business
Corporation*.  The LLC will be treated as a corporation as of the effective date of the S
corporation election and does not need to file Form 8832.

To obtain tax forms and publications, including those referenced in this notice,
visit our Web site at www.irs.gov.  If you do not have access to the Internet, call
1-800-829-3676 (TTY/TDD 1-800-829-4059) or visit your local IRS office.

IMPORTANT REMINDERS:

*   Keep a copy of this notice in your permanent records.  **This notice is issued only
    one time and the IRS will not be able to generate a duplicate copy for you.**  You
    may give a copy of this document to anyone asking for proof of your EIN.

*   Use this EIN and your name exactly as they appear at the top of this notice on all
    your federal tax forms.

*   Refer to this EIN on your tax-related correspondence and documents.

If you have questions about your EIN, you can call us at the phone number or write to
us at the address shown at the top of this notice.  If you write, please tear off the stub
at the bottom of this notice and send it along with your letter.  If you do not need to
write us, do not complete and return the stub.

Your name control associated with this EIN is SUNR.  You will need to provide this
information, along with your EIN, if you file your returns electronically.

Thank you for your cooperation.



DEFENDANT'S
EXHIBIT

A

2:20CR00301

IRS DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI OH 45999-0023

Date of this notice: 09-18-2019

Employer Identification Number:
84-3086603

Form: SS-4

Number of this notice: CP 575 G

SUNRISE AT SPANISH TERRACE LLC
STACI MILLIGAN SOLE MBR
1748 GLENDELL DR
OREM, UT 84058

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.

## WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

Thank you for applying for an Employer Identification Number (EIN). We assigned you EIN 84-3086603. This EIN will identify you, your business accounts, tax returns, and documents, even if you have no employees. Please keep this notice in your permanent records.

When filing tax documents, payments, and related correspondence, it is very important that you use your EIN and complete name and address exactly as shown above. Any variation may cause a delay in processing, result in incorrect information in your account, or even cause you to be assigned more than one EIN. If the information is not correct as shown above, please make the correction using the attached tear off stub and return it to us.

A limited liability company (LLC) may file Form 8832, *Entity Classification Election*, and elect to be classified as an association taxable as a corporation. If the LLC is eligible to be treated as a corporation that meets certain tests and it will be electing S corporation status, it must timely file Form 2553, *Election by a Small Business Corporation*. The LLC will be treated as a corporation as of the effective date of the S corporation election and does not need to file Form 8832.

To obtain tax forms and publications, including those referenced in this notice, visit our Web site at www.irs.gov. If you do not have access to the Internet, call 1-800-829-3676 (TTY/TDD 1-800-829-4059) or visit your local IRS office.

IMPORTANT REMINDERS:

* Keep a copy of this notice in your permanent records. This notice is issued only one time and the IRS will not be able to generate a duplicate copy for you. You may give a copy of this document to anyone asking for proof of your EIN.

* Use this EIN and your name exactly as they appear at the top of this notice on all your federal tax forms.

* Refer to this EIN on your tax-related correspondence and documents.

If you have questions about your EIN, you can call us at the phone number or write to us at the address shown at the top of this notice. If you write, please tear off the stub at the bottom of this notice and send it along with your letter. If you do not need to write us, do not complete and return the stub.

Your name control associated with this EIN is SUNR. You will need to provide this information, along with your EIN, if you file your returns electronically.

Thank you for your cooperation.

# EXHIBIT B

File Number: 11448313

# LLC

## Certificate of Organization
## OF
## BAG1 Funding, LLC

**The undersigned person(s) do hereby adopt the following Certificate of Organization for the purpose of forming a Utah Limited Liability Company.**

### Article I
**The name of the limited liability company is to be** BAG1 Funding, LLC

### Article II
**The purpose or purposes for which the company is organized is to engage in:**
Financial assets management

**The Company shall further have unlimited power to engage in or to perform any and all lawful acts pertaining to the management of any lawful business as well as to engage in and to do any lawful act concerning any and all lawful business for which a Limited Liability Company may be organized under the Utah Limited Liability Company Act and any amendments thereto.**

### Article III
**The Company shall continuously maintain an agent in the State of Utah for service of process who is an individual residing in said state. The name and address of the initial registered agent shall be:**

*(Registered Agent Name & Address)*
Steve Nuttal
273 W Center St
Provo, UT, 84601



State of Utah
Department of Commerce
Division of Corporations & Commercial Code

This certifies that this registration has been filed and approved on 5, September 2019 in the office of the Division and hereby issues this Certification thereof.

JASON STERZER
Division Director



DEFENDANT'S
EXHIBIT
B
2:20CR00301

BR-BAG-01-00001

## Article IV

*Name, Street address & Signature of all members/managers*

Manager #1
Staci Milligan
1748 Glendell Dr
Orem, UT 84058
Staci Milligan (POA or AIF)
Signature

**DATED** 5 September, 2019.

## Article V

Management statement
This limited liability company will be managed by its Managers

## Article VI

**Records required to be kept at the principal office include, but are not limited to the following:**

### Article VI.1

A current list in alphabetical order of the full name
and address of each member and each manager.

### Article VI.2

A copy of the stamped certificate of Organization
and all *certificates of amendments thereto.*

### Article VI.3

Copies of all tax returns and financial statements
of the company for the three most recent years.

### Article VI.4

A copy of the company's operating agreement and minutes of each meeting of members.

## Article VII

**The street address of the principal place of business is:**

273 W Center St
Provo, UT 84601

## Article VIII

**The duration of the company shall be** perpetual

Under GRAMA {63-2-201}, all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.

## MEMBER ASSIGNMENT OF INTEREST IN THE OPERATING AGREEMENT FOR SUNRISE AT SPANISH TERRACE, LLC

WHEREAS, SUNRISE AT SPANISH TERRACE, LLC,   is a single-member LLC with Matthew Baker as its sole Member and Manager, pursuant to its operating agreement with effective date 7/30/15;

WHEREAS, Matthew Baker desires to assign all of his member interest in SUNRISE AT SPANISH TERRACE, LLC;

WHEREFORE, Matthew Baker, Pursuant to Paragraph 10.1 of the Operating Agreement, does hereby convey, assign, and transfer, effective as of the date signed below, to Staci Milligan, 100% of his Member Interest in SUNRISE AT SPANISH TERRACE, LLC;

Matthew Baker

Member, SUNRISE AT SPANISH TERRACE, LLC

Date

DEFENDANT'S
EXHIBIT
2
2:20CR00301

OPERATING AGREEMENT

OF

SUNRISE AT SPANISH TERRACE, LLC

Dated effective as of the 14th day of April, 2019



DEFENDANT'S
EXHIBIT

3

2:20CR00301

tabbies

OPERATING AGREEMENT
OF
SUNRISE AT SPANISH TERRACE, LLC

TABLE OF CONTENTS

Page

ARTICLE I  DEFINITIONS ............................................................................................. - 1 -
   1.1    Definitions ......................................................................................... - 1 -

ARTICLE II  FORMATION AND NAME; PRINCIPAL PLACE OF BUSINESS;
        TERM ....................................................................................................... - 3 -
   2.1    Formation and Name............................................................................. - 3 -
   2.2    Principal Place of Business .................................................................. - 3 -
   2.3    Registered Office and Registered Agent.............................................. - 3 -
   2.4    Term of the Company............................................................................ - 3 -

ARTICLE III  PURPOSES AND POWERS OF THE COMPANY ................................. - 3 -
   3.1    Purposes .............................................................................................. - 3 -
   3.2    Powers ................................................................................................. - 3 -

ARTICLE IV  TAX AND ACCOUNTING MATTERS...................................................... - 4 -
   4.1    Characterization as a Sole Proprietorship ........................................... - 4 -
   4.2    Fiscal Year ........................................................................................... - 4 -
   4.3    Accounting Method............................................................................... - 4 -
   4.4    Tax Elections........................................................................................ - 4 -

ARTICLE V  CAPITAL CONTRIBUTIONS; LOANS..................................................... - 4 -
   5.1    Initial Capital Contribution .................................................................... - 4 -
   5.2    Loans ................................................................................................... - 4 -
   5.3    Interest on Contributions ...................................................................... - 4 -

ARTICLE VI  NET CASH FLOW AND DISTRIBUTIONS............................................. - 4 -
   6.1    Distribution of Net Cash Flow ............................................................... - 4 -

ARTICLE VII  RIGHTS AND DUTIES OF MANAGER .................................................. - 5 -
   7.1    Management ......................................................................................... - 5 -
   7.2    Tenure and Succession........................................................................ - 5 -
   7.3    Liability for Certain Acts........................................................................ - 5 -
   7.4    Indemnification ..................................................................................... - 5 -
   7.5    Resignation .......................................................................................... - 5 -

7.6    Company Books .............................................................................. - 5 -
7.7    Removal of Manager ...................................................................... - 6 -

ARTICLE VIII  RIGHTS AND OBLIGATIONS OF THE MEMBER ............................ - 6 -
8.1    Limitation of Liability ...................................................................... - 6 -

ARTICLE IX  ADMISSION OF NEW MEMBERS .................................................. - 6 -
9.1    New Members. ............................................................................... - 6 -

ARTICLE X  TRANSFER OF MEMBER'S INTEREST ......................................... - 6 -
10.1    Transfer by Member ...................................................................... - 6 -
10.2    Effect of Transfer; Status of Transferee ................................... - 6 -

ARTICLE XI  DISSOLUTION AND TERMINATION ............................................. - 7 -
11.1    Dissolution and Continuation ........................................................ - 7 -
11.2    Winding Up the Company .............................................................. - 7 -
11.3    Distribution of Liquidation Proceeds ............................................ - 7 -
11.4    Articles of Dissolution ................................................................... - 7 -

ARTICLE XII  MISCELLANEOUS PROVISIONS ................................................ - 8 -
12.1    Amendments ................................................................................. - 8 -
12.2    Governing Law ............................................................................. - 8 -
12.3    Construction ................................................................................. - 8 -
12.4    Headings ...................................................................................... - 8 -
12.5    Binding Effect ............................................................................... - 8 -

SIGNATURE PAGE ................................................................................. - 9 -

SCHEDULE A ........................................................................................ A

**OPERATING AGREEMENT**
**OF**
**SUNRISE AT SPANISH TERRACE, LLC**

THIS OPERATING AGREEMENT is made, declared, and adopted pursuant to Section 48-2c-504 of the Utah Revised Limited Liability Company Act ("URLLCA") effective as of the 14th day of April, 2019, by Staci Milligan, the sole Member of SUNRISE AT SPANISH TERRACE, LLC, a Utah limited liability company, and is intended to constitute an operating agreement within the meaning of the URLLCA.

ARTICLE I
DEFINITIONS

1.1    Definitions.  The following terms used herein have the following meanings (unless otherwise expressly provided herein):

(a)    "Adjusted Tax Basis" means the adjusted tax basis of property for Federal income tax accounting purposes.

(b)    "Company" means SUNRISE AT SPANISH TERRACE, LLC.

(c)    "Entity" means any general partnership, limited partnership, limited liability company, corporation, joint venture, trust, business trust, estate, cooperative association, or other entity.

(d)    "Financial Insolvency" of the Member means:

(1)    The making of an assignment for the benefit of creditors by such Member;

(2)    The filing of a voluntary petition in bankruptcy by such Member;

(3)    The adjudication of such Member as bankrupt or insolvent;

(4)    The filing by such Member of a petition or answer seeking for such Member any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any statute, law, or regulation;

(5)    The filing of an answer or other pleading by such Member admitting or failing to contest the material allegations of a petition filed against such Member in any proceeding described in subsection (4) above;

(6)    The seeking, consent to, or acquiescence in by such Member of the appointment of a trustee, receiver, or liquidator of such Member or of all or any substantial part of such Member's properties; or

(7)     The failure of any proceeding against such Member seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any statute, law or regulation to be dismissed within 120 days after its commencement; or the failure of any appointment, made without such Member's consent or acquiescence, of a trustee, receiver or liquidator of such Member or of all or any substantial part of such Member's properties to be vacated or stayed within 90 days after such appointment, or the failure of any such appointment to be vacated within 90 days after the expiration of any such stay.

(e)     "Fiscal Year" means the Company's fiscal and taxable year.

(f)     "IRC" means the Internal Revenue Code of 1986, as amended, and all references to specific sections thereof shall include any amended or successor provisions thereto.

(g)     "Legal Incompetency" of an individual Member means a declaration of such Member's incompetency, whether for insanity, age, disability or other reason. For this purpose, such declaration shall be made by a duly licensed physician.

(h)     "Liquidation" means the liquidation of the Company.

(i)     "Manager" means the Person designated by the Member to manage the Company, as set forth in Article VII, below.

(j)     "Member" means the party who executes this Operating Agreement as its sole initial Member.

(k)     "Net Cash Flow" of the Company shall be determined for each Company fiscal and taxable year, in accordance with sound, cash basis accounting principles, and means (a) all cash receipts of the Company during such year, from whatever source, whether or not taxable, including capital contributions by the Member, plus (b) any cash that becomes available during such year by reason of a reduction in the cash reserves of the Company, referred to in (d) below, less (c) all cash expenditures and cash losses of the Company during such year, whether capital or current, tax deductible or nondeductible (including debt service payments but excluding distributions to the Member), and less (d) reasonable additions during such year to Company cash reserves deemed necessary by the Manager in its sole and absolute discretion for working capital, contingent liabilities, debt reserves, capital improvements and replacements, and investments.

(l)     "Person" shall mean any individual or Entity, and the heirs, executors, administrators, legal representatives, successors, and assigns of such Person where the context so admits.

- 2 -

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

12.1 <u>Amendments</u>. This Operating Agreement may be amended, or amended and restated, at any time as determined by the Member.

12.2 <u>Governing Law</u>. This Operating Agreement is entered into under and shall be governed by the laws of the State of Utah.

12.3 <u>Construction</u>. Whenever the singular number is used in this Operating Agreement and when required by the context, the same shall include the plural, and the masculine gender shall include the feminine and neuter genders, and vice versa.

12.4 <u>Headings</u>. The headings in this Operating Agreement are inserted for convenience only and are in no way intended to describe, interpret, define, or limit the scope, extent, or intent of this Operating Agreement or any provision hereof.

12.5 **Binding Effect**. Each and all of the covenants, terms, provisions, and agreements herein contained shall be binding upon and inure to the benefit of the Member and, to the extent permitted by this Operating Agreement, its heirs, legal representatives, successors, and assigns.

[Signatures on the following page]

- 8 -

IN WITNESS WHEREOF, this Operating Agreement has been adopted on the date hereinabove first written by the Member, whose mailing address is set forth below.

Mailing Address:
1748 Glendell Dr
Orem, UT 84058

MEMBER:

Staci Milligan

1209687

## SCHEDULE "A"

<u>Original Capital Contribution</u>

| Member | Amount or Item | Value |
|--------|----------------|-------|
| Staci Milligan | | |

A

(m)    "Regulations" refers to the income tax regulations promulgated under the IRC, as amended from time to time (including corresponding revisions of successor regulations).

(n)    "URLLCA" means the Utah Revised Limited Liability Company Act (Title 48, Chapter 2c, Utah Code Annotated of 1953, as amended), and all references to specific sections thereof shall include any amended or successor provisions thereto.

## ARTICLE II
## FORMATION AND NAME; PRINCIPAL PLACE OF BUSINESS; TERM

2.1    Formation and Name.  The Member has acquired a limited liability company under the name of SUNRISE AT SPANISH TERRACE, LLC.  The Member desires to govern the affairs of the Company by adopting this Operating Agreement as the operating agreement of the Company.

2.2    Principal Place of Business.  The principal place of business of the Company, at which location the records required to be maintained by URLLCA Section 48-2c-113 shall be kept, is 1748 Glendell Drive, Orem, Utah 84058.  The Manager may at any time change the principal place of business or designate additional places of business of the Company.

2.3    Registered Office and Registered Agent.  The Company's registered office shall be at 1748 Glendell Drive, Orem, Utah 84058, and the name of its initial noncommercial registered agent appointed pursuant to the Utah Model Registered Agents Act, Title 16, Chapter 17 of the Utah Code Annotated, as amended, at such address shall be Staci Milligan.  The Company may change the registered office and/or the registered agent at such times and from time to time as the Manager may deem advisable.

2.4    Term of the Company.  The term of the Company commenced on the filing of the Articles of Organization and shall continue as provided by law thereafter, unless the URLLCA is amended to allow perpetual existence of limited liability companies, upon which the term of this Company shall be perpetual, unless earlier terminated by law or as hereinafter provided.

## ARTICLE III
## PURPOSES AND POWERS OF THE COMPANY

3.1    Purposes.  The Company is organized for any and all lawful purposes for which companies may be organized pursuant to the URLLCA, including but not limited to the acquisition, ownership, holding for investment, financing, development, construction, management, sale, lease, rent, exchange and all other modes of dealing with all forms of real and personal property, tangible and intangible, wherever located.

3.2    Powers.  The Company shall have and may exercise all powers necessary to the accomplishment of its purposes without the necessity of their specific enumeration herein.

- 3 -

## ARTICLE IV
## TAX AND ACCOUNTING MATTERS

4.1     Characterization as a Sole Proprietorship.  Pursuant to Regulations Section 301.7701-3(b)(1)(ii), it is the intent of the Member that the Company be classified as a disregarded entity for Federal and state income tax purposes. Accordingly, this Operating Agreement is written and shall be construed in a manner consistent with such intent and the Manager shall take no action inconsistent with such intent.

4.2     Fiscal Year.  The Fiscal Year of the Company shall be the same as that of the Member.

4.3     Accounting Method.  The Company books of account shall be maintained and its income, gains, losses, deductions, and credits shall be reported, for both financial and tax accounting purposes, on the same method of accounting as the Member.

4.4     Tax Elections.  The Manager must obtain the Member's written consent before making any and all tax elections available to the Company under the provisions of the IRC or the tax laws of any state.

## ARTICLE V
## CAPITAL CONTRIBUTIONS; LOANS

5.1     Initial Capital Contribution.  The Member has made an initial capital contribution to the Company of cash and/or interests in property in the amount and at the value set forth opposite its name in Schedule "A", attached hereto and made a part hereof by this reference.

5.2     Loans.  The Member may loan money to the Company at such times, in such amounts, and on such terms and conditions as the Member and the Company shall agree on.

5.3     Interest on Contributions.  No interest shall accrue or be paid on the capital contribution of the Member.

## ARTICLE VI
## NET CASH FLOW AND DISTRIBUTIONS

6.1     Distribution of Net Cash Flow.  The Net Cash Flow of the Company shall be distributed to the Member at such times and in such amounts as the Member shall deem advisable.

## ARTICLE VII
## RIGHTS AND DUTIES OF MANAGER

7.1    Management.  As provided in the Articles of Organization of the Company, the day-to-day business and affairs of the Company shall be managed by the individual designated by the Member as the Manager.  By her signature hereto, the Member hereby designates Staci Milligan as the sole initial Manager of the Company (the "Manager").  The Manager shall direct, manage, and control the day-to-day business of the Company and shall have the necessary power and authority to carry out such actions.

7.1    Tenure and Succession.  Staci Milligan shall serve as the initial Manager until her resignation, death, or Financial Insolvency, whichever first occurs, in which event the Member shall elect a successor.

7.2    Liability for Certain Acts.  The Manager shall exercise her business judgment in managing the business, operations, and affairs of the Company.  Unless fraud, gross negligence, or willful misconduct shall be proved by a court order, judgment, decree, or decision which has become final, the Manager shall not be liable or obligated to the Company or the Member for any mistake of fact or judgment or for the doing or failure to do of any act in conducting the business, operations, and affairs of the Company which causes or results in any loss or damage to the Company or its Member.

7.3    Indemnification.  The Company shall indemnify the Manager in the event it is made a party to any threatened, pending, or completed action, suit, or proceeding, whether civil, criminal, administrative, or investigative by reason of the fact that it is or was a Manager, against costs and expenses, including attorneys' fees, judgments, fines, and amounts paid in settlement, actually and reasonably incurred by such Manager in connection with the action, suit, or proceeding if it acted in good faith and in a manner it reasonably believed to be in or not opposed to the best interests of the Company, and, with respect to any criminal action or proceeding, had no reasonable cause to believe that its conduct was unlawful.  The termination of any action, suit, or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that such Manager (a) did not act in good faith and in a manner which it reasonably believed to be in or not opposed to the best interests of the Company, and (b) with respect to any criminal action or proceeding, had reasonable cause to believe that its conduct was unlawful.

7.4    Resignation.  The Manager may resign at any time by giving written notice to the Member of the Company.  The resignation of the Manager shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice, and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

7.5    Company Books.  The Manager shall maintain and preserve at the Company's principal place of business, during the term of the Company and for six (6)

- 5 -

years thereafter, all accounts, books, and other documents and records, including those required to be maintained by URLLCA Section 48-2c-113. Upon reasonable request, the Member shall have the right, during ordinary business hours, to inspect and copy such Company documents at the Member's expense.

7.6     Removal of Manager. The Member may remove and replace the Manager at any time for any reason.

## ARTICLE VIII
## RIGHTS AND OBLIGATIONS OF THE MEMBER

8.1     Limitation of Liability. The Member shall not be personally liable for any debts, obligations, liabilities, or losses of the Company, regardless of the particular nature or source thereof, beyond such Member's capital interest in the Company. Notwithstanding the foregoing, unless otherwise excused by the URLLCA, in the event the Member has in fact received the return, in whole or in part, of its capital contribution, the Member shall be liable for and agrees to repay to the Company up to the amount of such returned contribution, to the extent required by URLLCA Section 48-2c-602(6).

## ARTICLE IX
## ADMISSION OF NEW MEMBERS

9.1     New Members. In the event the Member decides to admit additional persons as Members of the Company, it will be necessary to amend and restate this Operating Agreement, among other reasons, in order to reflect the Company's changed status into that of a partnership for Federal tax purposes. If necessary, the Manager, with Member approval, shall also file an appropriate amendment to the Articles of Organization of the Company if required by URLLCA Section 48-2c-405 to do so.

## ARTICLE X
## TRANSFER OF MEMBER'S INTEREST

10.1     Transfer by Member. The Member may sell, exchange, assign, or otherwise transfer, or mortgage, pledge, or otherwise encumber all or any part of her interest in the Company, whether by agreement, contract, gift, will, or intestacy, or pursuant to an incorporation, liquidation, distribution, termination, consolidation, reorganization, merger, or other event. In the event of any voluntary transfer by the Member of its entire interest in the Company, unless otherwise specified, such transferee shall be substituted in place of the transferring Member as the sole Member of the Company.

10.2     Effect of Transfer; Status of Transferee. Except as provided in Section 10.1 above and in this Section 10.2, the Transfer of a partial interest in the Company, voluntary or involuntary, permissible or impermissible, shall be effective only to transfer the transferring Member's economic rights in such interest and not to transfer the Member's voting, management, and other rights of ownership with respect to such interest. Accordingly, any transferee of such interest shall have the status of a mere assignee under URLLCA Section 48-2c-1102 and shall not be entitled to become, nor to

- 6 -

exercise any of the rights of, a Member in the Company unless and until such transferee is admitted as a Member of the Company.

## ARTICLE XI
## DISSOLUTION AND TERMINATION

11.1 <u>Dissolution and Continuation</u>. The Company shall be dissolved upon the occurrence of any of the following events:

      (a)    when the period fixed for the duration of the Company shall expire; or

      (b)    upon the decision of the Member to dissolve the Company.

The Financial Insolvency or Legal Incompetency of the Member shall not dissolve the Company.

11.2 <u>Winding Up the Company</u>. Upon dissolution of the Company, the Manager shall immediately commence to wind up the affairs of the Company and shall engage in an orderly disposition of its assets where such can be done at a fair value (except to the extent the Manager may determine to distribute any assets to the Member in kind).

11.3 <u>Distribution of Liquidation Proceeds</u>. Pursuant to the winding up of the Company's affairs, the Company assets and the proceeds from the disposition of Company assets shall be applied in order of priority as follows:

      (a)    First, to creditors of the Company other than the Member;

      (b)    Second, to the Member.

11.4 <u>Articles of Dissolution</u>. When all debts, liabilities, and obligations of the Company have been paid and discharged or adequate provisions have been made therefor and all of the remaining property and assets of the Company have been distributed to the Member, Articles of Dissolution shall be executed and filed pursuant to URLLCA Sections 48-2c-1204. Upon issuance by the State of Utah of a certificate of dissolution, the Company shall be terminated.



**DEFENDANT'S EXHIBIT 9**

tables

2:20CR00301



DEFENDANT'S
EXHIBIT
10
2:20CR00301

## ASSIGNMENT OF MEMBER INTEREST IN FOXTROT UNITED, LLC

## And

## Agreement Regarding Bankruptcy Sale Proceeds

WHEREAS, FOXTROT UNITED, LLC,   is a single-member LLC which was organized on 10/28/2019, with Matthew Baker as its sole Member and Manager;

WHEREAS, Foxtrot United, LLC's only asset was interest in real property located at 265 W Center St, Provo, UT;

WHEREAS, that interest has been sold through bankruptcy proceedings and is only awaiting a final accounting from the Bankruptcy Trustee;

WHEREAS, Matthew Baker desires to assign all of his Membership Interest in FOXTROT UNITED, LLC;

WHEREFORE, Matthew Baker, Pursuant to The Operating Agreement of Foxtrot United, LLC, Paragraph 10.1, for $10 and other good and valuable consideration, does hereby assign, transfer, and convey to Staci Baker, 100% of his Member Interest in Foxtrot United, LLC;

FURTHERMORE, it is hereby agreed that any proceeds from the Bankruptcy Trustee sale shall belong to Matthew Baker.

_____          8/18/21
_____

Matthew Baker                                                    Date

Member/Manger Foxtrot United, LLC


_____          8.18.21
_____

Staci Baker                                                         Date

Assignee Member Foxtrot United, LLC

DEFENDANT'S
EXHIBIT
11
2:20CR00301

tabbies



## Ashlie Henrie

Branch Manager /

Escrow Officer

375 East 800 South

Orem, Utah 84097

O: 801.216.8880

F:  801.216.8887

E: ashlie@chargertitle.com

Charger Title

Insurance Agency

**"Service with Strength"**

This email and any files transmitted with it are confidential and may contain information that is privileged and exempt from disclosure under applicable law. If you are not the intended recipient please note that any dissemination, distribution, copying or the taking of any action in reliance upon the message is strictly prohibited. If you have received this email in error please notify the sender immediately.

**From:** Matt Baker <matt4freedom@yahoo.com>
**Sent:** Wednesday, June 9, 2021 11:54 AM
**To:** Leslie Peterson <leslie@chargertitle.com>
**Subject:** Re: info needed Sunrise at Spanish Terrace/ Creative Vision 15 E 100 N Spanish Fork 6134LP

The lender for the first is Brighton Bank, account # 67-40294-1 and their phone number is 801-943-6500

4



DEFENDANT'S
EXHIBIT
12
2:20CR00301

CHT-01-00144

Attached are the Articles for SAS r, LLC

There is no HOA

Attached also is the current rent roll with deposits

Thanks

Matt

On Tuesday, June 8, 2021, 02:04:13 PM MDT, Leslie Peterson <leslie@chargertitle.com> wrote:

Matt or Staci, can you please assist us with the requested items below?

We will not be able to close unless we get the information soon.

Thanks



**Charger Title**

Insurance Agency

## Leslie Peterson

Owner / Escrow Officer

375 E 800S

Orem, Utah 84097

O: 801.216.8880

F: 801.216.8887

5

CHT-01-00145

C: 801.830.7529

E:
leslie@chargertitle.com

This email and any files transmitted with it are confidential and may contain information that is privileged and exempt from disclosure under applicable law. If you are not the intended recipient please note that any dissemination, distribution, copying or the taking of any action in reliance upon the message is strictly prohibited, If you have received this email in error please notify the sender immediately.

**From:** Leslie Peterson
**Sent:** Thursday, June 3, 2021 1:04 PM
**To:** matt4freedom@yahoo.com
**Cc:** Ashlie Henrie <Ashlie@chargertitle.com>
**Subject:** info needed Sunrise at Spanish Terrace/ Creative Vision 15 E 100 N Spanish Fork 6134LP

Thanks for taking my call Matt.

Per our conversation please send the following:
Payoff information for Brighton Bank, so we can request the current mortgage payoff

Articles for Spanish Terrance, LLC

Rent roll, please make sure this includes the deposits amounts as well

Is there an HOA? If so please provide contact info for this as well.

Let us know if you have any questions.

thanks

6



DEFENDANT'S
EXHIBIT
14
2:200CR00301



United States Probation And Pretrial Services – District of Utah
Evidence/Property Receipt

CASE NAME: Matthew Baker
ADDRESS: 7825 South River Bottom Rd
Spanish Fork UT 84660

PACTS No. 6053643
Name and title of person from whom received:
☐ Owner Matthew Baker
☐ Other

Date/Time Obtained:

Kitchen

On scene evidence custodian:

Nate Driedger

| Item No. | Quantity | Description of Property (Include model, serial number, color, condition, and unusual marks or scratches and where and by whom the item was located) |
|----------|----------|--------------------------------------------------------------------------------------------------------------------------------------------------|
| 1 | 1 | LG Smart phone – Black – Small – no markings |
| 1 | 1 | HP block tower s/n: MXL2020G4L |

**CHAIN OF CUSTODY**

| Item No. | Date | Released by | Received by | Purpose for change of custody |
|----------|------|-------------|-------------|-------------------------------|
| | | | Signature/Title | |
| | | Signature/Title | Signature/Title | |
| | | Signature/Title | Signature/Title | |



## United States Probation And Pretrial Services - District of Utah
### Evidence/Property Receipt

| CASE NAME: Matthew Baker | PACTS No. 6053643 |
|---|---|
| ADDRESS: 7825 South River Bottom Rd Spanish Fork UT 84660 | Name and title of person from whom received: ☑ Owner  Matthew Baker  ☐ Other |
| Date/Time Obtained:  Garage | On scene evidence custodian:  Nate Diedger |

| Item No. | Quantity | Description of Property (Include model, serial number, color, condition, and unusual marks or scratches and where and by whom the item was located) |
|---|---|---|
| 1 | 1 | HP tower Black+Silver Pavilion e3000 S/N MX L71502KV |
| 2 | 2 1 | Dell tower Vistio Black Probot Key S/N 00186-202-282-523 |
| 3 | 1 | Dell tower 00146-527-240-862 |
| 4 | 1 | HP tower- S/N 8C6983G960 |
| 5 | 1 | Dell Vista tower Blak 1155182G465 |
| 6 | 1 | Dell tower Black Pkey xxx42529884572 |
| 7 | 1 | HP black tower PC 2MD 1016 0014 |
| 8 | 1 | Misc Documents |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

### CHAIN OF CUSTODY

| Item No. | Date | Released by | Received by | Purpose for change of custody |
|---|---|---|---|---|
|  |  |  | Signature/Title |  |
|  |  | Signature/Title | Signature/Title |  |
|  |  | Signature/Title | Signature/Title |  |



## United States Probation And Pretrial Services - District of Utah
### Evidence/Property Receipt

| CASE NAME: | | PACTS No. | |
|---|---|---|---|
| ADDRESS: | | Name and title of person from whom received: | |
| | | ☐ Owner _____ | |
| | | ☐ Other _____ | |
| Date/Time Obtained: | | On scene evidence custodian: | |
| Computer room basement | | | |

| Item No. | Quantity | Description of Property (Include model, serial number, color, condition, and unusual marks or scratches and where and by whom the item was located) |
|---|---|---|
| 1 | 1 | Samsung Smartphone / Broken Screen SM-J337P Black w/ sticker |
| 2 | 1 | Motorola Smart Phone Black Scratch Screen: XT2005-5 |
| 3 | 1 | External HD Seagate 8TB NAAAH5W3 |
| 4 | 1 | External HD Attached to Dell tower HD: Dries case w/ toshiba HD 87RSPGWST |
| 5 | 1 | Dell Tower Black service code: 5726860945 (HD attached to to tower -USB) |
| 6 | 1 | USB (attached) 2GB toshiba 1025RA4832KAJMI |
| 7 | 1 | Dell Tower (Large) 4C7CPD1 |
| 8 | 1 | Green + Silver "Attached" |
| 9 | 1 | Black + Red thumb drive Raker Generational |
| 10 | 1 | Sandisk SD card 128 GB BP19312530004 |
| 11 | 1 | Micro SD card Sandisk 32 GB 0504YX6F158E |
| 12 | 1 | Blue metallic thumb drive Mark 12 |
| 13 | 2 | Micro SD KOONTION 32GB |
| 14 | 1 | Compact flash 2GB |
| 15 | 1 | SD card Lexar 16B 9UER60A |
| 16 | 1 | DT50 USB Silver |
| 17 | 1 | Data transfer USB 16GB Kingston DT100G8 |
| 18 | 1 | Sandisk Ultra 16GB BL150325268B |
| 19 | 1 | Lexar USB 16GB orange LJDTT466 |
| 20 | 1 | SD card Sandisk 4GB BH0802913279G |
| 21 | 1 | 2GB - Black + Red |
| 22 | 1 | PNY USB 4GB silver metal |
| 23 | 1 | PNY metal 4GB blue Raker |
| 24 | Stack | Stack of Financial documents (Paper) |

### CHAIN OF CUSTODY

| Item No. | Date | Released by | Received by | Purpose for change of custody |
|---|---|---|---|---|
| | | | Signature/Title | |
| | | Signature/Title | Signature/Title | |
| | | Signature/Title | Signature/Title | |

**United States Probation And Pretrial Services – District of Utah**
**Evidence/Property Receipt**

| CASE NAME: Matthew Baker | PACTS No. 6053643 |
|---|---|
| ADDRESS: 1748 Glendell Dr. <br> Orem UT (1st house) | Name and title of person from whom received: <br> ☑ Owner   Matthew Baker <br> ☐ Other |
| Date/Time Obtained: <br> 3/30/22 | On scene evidence custodian: <br> Nate Dredger |

| Item No. | Quantity | Description of Property <br> (Include model, serial number, color, condition, and unusual marks or scratches and where and by whom the item was located) |
|---|---|---|
| 1 | 1 | Tmobil Cell phone Smart Phone IMEI 01571001288247 (Blue Case) |
| 2 | 1 | old sword (very old) |
| 3 | 1 | Check books, pay s& bank Stubs, Mail, misc. docs |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

**CHAIN OF CUSTODY**

| Item No. | Date | Released by | Received by | Purpose for change of custody |
|---|---|---|---|---|
|  |  |  | Signature/Title |  |
|  |  | Signature/Title | Signature/Title |  |
|  |  | Signature/Title | Signature/Title |  |

**United States Probation And Pretrial Services – District of Utah**
**Evidence/Property Receipt**

| CASE NAME: Mathew Baker | PACTS No. |
|---|---|
| ADDRESS: | Name and title of person from whom received: |
| TITAN TRUCK | ☐ Owner _____ |
| | ☐ Other _____ |
| Date Time Obtained: | On scene evidence custodian: |
| 1930 hrs | |

| Item No. | Quantity | Description of Property (Include model, serial number, color, condition, and unusual marks or scratches and where and by whom the item was located) |
|---|---|---|
| 1 | 3 | Check books |
| 2 | 1 | LG AT&T smartphone black cracked screen |
| 3 | 1 | WIKO smartphone - blue 801-318-9235, 385-325-1891 locked |
| | | - Misc. Documents - |
| | | deposit slips |
| | | bank statements |
| | | warranty deed - BAK2 LLC |
| | | misc. bank mail |
| | 1 | Motorola smartphone - found in Wasatch Trailer |
| | 1 | Wallet |
| | | LD DANIEL NEBEKER DL |
| | | DANIEL NEBEKER Social card |
| | | " " " Venmo deposit |
| | | " " " VISA Debit |
| | | " " " America First Access card |

| | | CHAIN OF CUSTODY | | |
|---|---|---|---|---|
| Item No. | Date | Released by | Received by | Purpose for change of custody |
| | | | Signature/Title | |
| | | Signature/Title | Signature/Title | |
| | | Signature/Title | Signature/Title | |

*UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH*
# PROBATION AND PRETRIAL SERVICES OFFICE

## POST SEARCH REPORT

☐ **Initial Report**                              ☒ **Supplemental Report**

**Reporting Officer:** Ben Graham

**Case Name:** Baker, Matthew Ambrose

**PACTS:** 6053643

**Date of Search/Incident:** March 30, 2022

**Synopsis:**

USPO King reported Mr. Baker was in violation of his conditions of supervised release and pretrial supervision. He was ordered to not be in any fiduciary capacity or position allowing access to credit or personal information of others. It was reported Mr. Baker had opened Limited Liability Company's (LLC's) which coincided with previous criminal behaviors. A search of his current and previous residence was proposed to include electronic devices. A search was conducted by the United States Probation Office and numerous documents, electronics, ammunition, and cash were seized.

**Narrative:**

On March 29, 2022, I staffed a search on Mr. Matthew Ambrose Baker. USPO King was the assigned officer and reported Mr. Baker was in violation of his conditions of supervised release and pretrial release. He was on supervision for two separate matters. I looked at the conditions of release as standard practice to ensure there was a search condition. Both the supervised release and pretrial release contained a search condition allowing search based on reasonable suspicion and included search of "person, residence, office or vehicle". In addition to the search condition, Mr. Baker had a CIMP A condition which allows search of "computers, internet accessible devices, media storage devices, and digital media." In our search we would seek documents to include Warranty Deeds, Articles of Incorporation, and property sales. As well as bank statements and entity files that would include any LLC's that were unknown to probation.


DEFENDANT'S EXHIBIT
15
2:20CR00301

The matter was staffed with Supervisory United States Probation Officers as well as US Magistrate Cecilia Romero who all approved of the search.

On March 30, 2022, at approximately 1730 hours I responded to 1748 Glendell Drive, Orem, UT with USPO's Driedger, Birnbaum, Sinner and Lowrance.  I was advised this was a home owned by Mr. Baker but was a secondary residence at this time and was probably vacant.  There was no answer at the door however the home appeared to have some property inside along with packages with the defendant's name on the front porch.  While at the home an individual pulled into the driveway and walked to the backyard.  The individual, later identified as Matthew Ambrose Baker, was questioned in the driveway (south of home) upon exiting his backyard back to the driveway.  Mr. Baker was advised we were there to search his home and believed he was in violation of his conditions of release. Mr. Baker indicated he was not being respected and wanted more information and inquired why his probation officer was not at this location.  I contacted USPO King via cell phone and placed the call on speaker.  USPO King explained the alleged violations and that we were going to search his home based on the conditions of his release.  USPO King instructed us to take Mr. Baker's cell phone as he was attempting to contact his wife.  USPO King was concerned she might be able to conceal evidence of the violation prior to our arrival at the second home.

USPO Lowrance and I entered the home and cleared it for safety purposes.  No one else was located in the home. I assisted with a general search of the residence and located nothing that would be in violation of his conditions at the residence. Mr. Baker was instructed to return to his other residence and USPO Sinner and Birnbaum followed him in their vehicle.

We travelled to the defendant's primary address at 7824 South River Bottoms Road, Spanish Fork, UT. I assisted in searching a gray Scion IQ with Utah tag C15 4XE that was in the defendant's driveway.  Nothing was located in the vehicle.  After the search of the vehicle, I entered the two-story residence. I noted the defendant, the same male identified at the other home, sitting in the living room with USPO King. I moved to the basement where multiple officers were already searching.  I conducted a search of a cold storage room, and nothing was found.  I contacted AUSA Jennifer Muyskens and law enforcement who indicated that in addition to the documents we were seeking (i.e. warrant deeds, articles of incorporation and property sales) to also look for any specific documents with LLC names of Foxtrot, Sunrise Terrace and Maple Mountain Inv.  This information was passed on to the other officers searching throughout the residence.

During the search, USPO Tasia Benzmiller responded with a bag that appeared to contain a large amount of cash and one box of ammunition.  After I spoke with Supervisory U.S. Probation Officer, Tony Maxwell, it was determined the money should be counted and seized.  I requested USPO Benzmiller and Lowrance count the money and USPO Sinner video the count to ensure it was properly documented as it appeared to be a significant amount of money.  At

that time, I proceeded upstairs with the ammunition to ask Mr. Baker if there was any firearm in the home. Mr. Baker told me we were nothing more than armed robbers there to steal his money from his home. I informed him we were not there to take his money and if it was deemed not in violation to his case, the money would be returned. I asked Mr. Baker about a firearm a second time, and he responded he did not know what I was talking about. I asked again about the ammunition found in the basement being his and he again responded he did not know what ammunition I was talking about. I was holding the box of ammunition in my hand which should have been clearly visible to Mr. Baker. It appeared Mr. Baker did not want to discuss the ammunition, so I returned the box to the officers who had initially recovered it in the basement. I was later told that more money and ammunition were located upstairs in the defendant's bedroom. I instructed the officers count the money in the same manner as the other officers to maintain a consistent chain of custody.

As the search finished up, at approximately 20:41 hours, it was decided a small number of officers would return to the prior residence to ensure a firearm was not discarded at that location. This was based on the two boxes of ammunition discovered at the current residence and the hurried exit from the vehicle towards the backyard when Mr. Baker arrived at the first residence. USPO Sinner, Birnbaum and I returned to the Orem residence.

We searched the outside garbage can and the back yard area where Mr. Baker had gone upon arrival. The backyard had several fenced dogs, and we were unable to search that area. I searched part of the back yard and looked on the property immediately behind Mr. Baker's residence as it was an empty field. No firearm was located. Prior to leaving, the defendant's wife and children arrived at the location. She inquired how long the search would continue. I explained we finished the search at the other location, and we were done at the current location.

I asked about the ammunition in the home, and she stated she was unaware her husband could not have ammunition. I explained my belief there was an unlocated firearm based on the two boxes of ammunition located at the other residence and inquired if she was aware of a firearm. She told me she did not know of any firearms. We concluded our search at that time and returned to the probation office.

_____
USPO Signature

April 22, 2022
Date

Date submitted to officer's SUSPO: _____April 22, 2022_____

INVESTORS TITLE INSURANCE AGENCY, INC.
QUALIA TRUST ACCOUNT
Matthew Baker

Property Address:
Vacant Land
Springville, UT 84663

Buyer/Borrower: Z-ACT LLC
Seller: Matthew A. Baker
Listing Agent: Matthew Baker
Selling Agent: Caleb Oleyan
Sales Price: $1,000,000.00

$10,509.91

Refund Springville City Taxes / JJ-1150-IT

03/01/2022

Amount Breakdown

Utah County Assessor      $6,335.75, Utah County Assessor
$4,174.16

9383

---

**Check:**

INVESTORS TITLE INSURANCE AGENCY INC

**ITI**

QUALIA TRUST ACCOUNT
(801) 562-8888

FORTIS PRIVATE BANK
Centennial, Colorado 80112
82-642/1070

DATE 03/01/2022

AMOUNT $ 10,509.91

Ten Thousand Five Hundred Nine And 91/100 Dollars

PAY
TO THE
ORDER
OF:

Matthew Baker
1748 Glendell Drive
Orem, UT 84058

Refund Springville City Taxes / JJ-1150-IT

AUTHORIZED SIGNATURE

9383

Security features. Details on back.

⑆009383⑆ ⑆:107006428: 04 100 2 1285⑈

DEFENDANT'S
EXHIBIT
16
2:20CR00301
tabbies

PARSONS BEHLE & LATIMER
UTAH IOLTA TRUST ACCOUNT
201 SOUTH MAIN STREET, SUITE 1800
SALT LAKE CITY, UTAH 84111

JP MORGAN CHASE
201 SOUTH MAIN STREET
SALT LAKE CITY, UTAH 84111
97-154/1240

CHECK #: 000030865

CHECK DATE
02/24/2022

CHECK AMOUNT
*****39,563.79

PAY   Thirty Nine Thousand Five Hundred Sixty Three and 79/100 Dollars

VOID AFTER 6 MONTHS

TO THE
ORDER OF

Matthew Baker
1748 S. Glendell Dr.
Orem, UT 84058

PARSONS BEHLE & LATIMER

⑈000030865⑈ ⑆124001545⑈ 9⑆124553B 7⑈

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

THIS DOCUMENT CONTAINS SAFETY WATERMARKS ON REVERSE · HOLD AT ANGLE TO VIEW

| Date:02/24/2022 | | PARSONS BEHLE & LATIMER - UTAH IOLTA TRUST ACCOUNT | | Check #: 000030865 |
| Client/Matter No. | | Payee: Matthew Baker | Vendor #: 0000000 | |
| 29964 | -000-001 | Description | | Amount Paid |
| | | Refund of balance of retainer | | 39,563.79 |
| | | | | 39,563.79 |