THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MATTHEW AMBROSE BAKER,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING [274] MOTION TO ENFORCE PLEA AGREEMENT<br><br>Case No.: 2:20-cr-00301<br><br>Judge David Barlow |

Before the court is Matthew Ambrose Baker's Motion to Enforce Plea Agreement.[1] Mr. Baker requests that this court order specific performance of the plea agreement between the United States of America ("the Government") and Mr. Baker.[2] The Government contends that the plea agreement contemplated by the parties was never entered in court and never accepted by the two judges whose cases it would affect, and therefore it is a "'mere executory agreement' for which [Mr. Baker] cannot claim a constitutionally protected interest that gives this Court authority to enforce."[3] For the reasons that follow, the court denies Mr. Baker's Motion to Enforce Plea Agreement.

## BACKGROUND

On August 10, 2022, the grand jury returned a Superseding Indictment against Mr. Baker, charging him with wire fraud (two counts), criminal contempt ("Count 3"), and felon in possession of ammunition ("Count 4").[4] The court granted Mr. Baker's motion to sever the wire

---

[1] Mot. to Enforce Plea Agreement, ECF No. 274.
[2] *Id.* at 4.
[3] Opp'n 11, ECF No. 275, filed May 26, 2023.
[4] Superseding Indictment, ECF No. 115.

1

fraud counts from the criminal contempt and felon in possession counts,[5] and trial proceeded on the wire fraud counts in December 2022.[6] The jury found Mr. Baker guilty on both counts, and the court set sentencing for March 8, 2023.[7] Counts 3 and 4 were set for trial on February 6, 2023.[8]

On January 13, 2023, counsel for Mr. Baker emailed the court, copying the Government, stating that,

> Late yesterday afternoon, Mr. Baker reached an agreement with the government to finally resolve his outstanding matters. As part of his agreement, he is going to admit to a violation of his supervised release by transferring funds without permission. He is also agreeing to waive his right to a direct appeal of his conviction of the wire fraud case. In return, the government will dismiss Counts Three and Four of his pending Indictment and will recommend a sentence of 10 months on the supervised release violation, to be served consecutively to his wire fraud sentence. The government is drafting the written agreement now. Therefore, we will not need to go forward with the scheduled trial/pretrial conference.

Accordingly, the court canceled the February jury trial based on the defense representation.[9] On February 15, Mr. Baker filed a motion to continue sentencing due to a conflict on his counsel's schedule.[10] The court granted the motion and rescheduled Mr. Baker's sentencing for March 17, 2023.[11]

---

[5] ECF No. 208, entered Nov. 21, 2022.
[6] ECF Nos. 237, 240, 243, 245.
[7] ECF Nos. 245, 253.
[8] ECF No. 258.
[9] ECF No. 262.
[10] ECF No. 263.
[11] ECF Nos. 264, 265.

On March 2, 2023, Mr. Baker's counsel again emailed the court and the Government, stating,

> As you know, we have reached a plea agreement with the USA that will resolve the outstanding counts that were severed from Matt Baker's Indictment prior to trial. I am attaching a copy of the agreement.

Attached to the email was a document titled "SAP_Baker_Final." The document's caption labeled the document a "Statement by Defendant in Advance of Plea of Guilty and Plea Agreement." It was signed by the Assistant United States Attorney on this case, but not by Mr. Baker or his counsel.[12]

On March 6, 2023, Mr. Baker filed a Waiver of Speedy Trial Rights.[13] He had signed it on February 23, 2023.[14] The waiver stated that,

> Mr. Baker freely and voluntarily waives his right to a speedy trial on Counts 3 and 4 as the parties continue to negotiate a plea agreement and understands that any time elapsing from the time [of] his trial on Counts 3 and 4 was removed from the docket, until such time as a plea agreement has been entered or a new demand for trial has been filed, will be counted against the Defendant for purposes of the Speedy Trial Act.[15]

---

[12] The court observes that emailing a plea agreement to the court does not make the plea agreement binding; as discussed below, only the defendant's entry of a plea in court or the defendant's detrimental reliance can do that. *See United States v. Novosel*, 481 F.3d 1288, 1293 (10th Cir. 2007); *United States v. Villa-Vazquez*, 536 F.3d 1189, 1200 (10th Cir. 2008).

[13] ECF No. 266.

[14] *Id.*

[15] *Id.* at 1–2. On February 17, 2023, the parties had emailed about the language in this waiver. Defense counsel proffered the following email conversation:

> Government: "We are fine with him signing something like this, but the document says we are still negotiating a plea resolution. What are we negotiating?"
> Defense counsel: "I just put that because the plea hasn't happened yet. I don't think we are negotiating anything at this point."
> Government: "I think it needs to read that the parties have reached a plea agreement and are working on scheduling the entry of the plea."
> Defense counsel: "Too late. I already mailed it."

Reply 2, ECF No. 280.

3

On March 9, 2023, Mr. Baker's presentence report was filed on the docket.[16] It included a dozen pages of objections from the parties, including one objection from the Government and eleven objections from Mr. Baker. The next day, the court entered a notice vacating Mr. Baker's sentencing hearing "[t]o allow counsel time to file any additional sentencing materials for the court's consideration and to give the court sufficient time to review the PSR and all sentencing materials . . . ."[17] The sentencing hearing was rescheduled for April 5, 2023.[18]

On March 30, 2023, Mr. Baker filed a motion to continue sentencing.[19] Mr. Baker informed the court that "[t]he government has recently alleged that Mr. Baker has engaged in witness tampering and will be asking for a sentencing enhancement on those grounds."[20] Because of this, Mr. Baker requested more time to investigate the allegation.[21] The court granted the motion, and sentencing was rescheduled for June 8, 2023.[22]

On May 12, 2023, Mr. Baker filed this Motion to Enforce Plea Agreement and Request for Hearing.[23] The Government filed an opposition on May 26, 2023.[24] Mr. Baker filed a reply on June 1, 2023.[25]

## DISCUSSION

Mr. Baker requests that the court prevent the government from "withdraw[ing] from the contract after Mr. Baker has already detrimentally relied on their promises by foregoing his constitutional right to a speedy trial."[26] The Government responds that, "upon learning of the

---

[16] ECF No. 267.
[17] ECF No. 268.
[18] ECF No. 269.
[19] ECF No. 272.
[20] *Id.* at 1.
[21] *Id.* at 1–2.
[22] ECF No. 273.
[23] ECF No. 274.
[24] ECF No. 275.
[25] ECF No. 280.
[26] Mot. to Enforce Plea Agreement 3.

4

Defendant's new criminal conduct and obstructive actions involving the victim of the wire fraud, and prior to the Defendant entering his guilty plea in court, the United States withdrew its plea offer."[27] It also contends that the court is "prohibited by Rule 11 from participating in plea negotiations," and that, by "enforcing" the purported plea agreement, the court would be injecting itself into plea negotiations and forcing the United States to change its plea position.[28]

"A plea agreement . . . is not simply a contract between two parties[;] [i]t necessarily implicates the integrity of the criminal justice system and requires the courts to exercise judicial authority in considering the plea agreement and in accepting or rejecting the plea."[29] "A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest."[30] "Courts have held that under Rule 11, '[a] plea agreement, and therefore any modification of a plea agreement, must be accepted by the court before it is binding.'"[31]

In *United States v. Novosel*, the Tenth Circuit noted that "Rule 11 does not address whether there are circumstances under which a signed plea agreement may be binding on the government prior to the defendant's entry of a guilty plea. The Supreme Court has held that when a prosecutor withdraws a plea agreement before the defendant enters his plea, the defendant cannot specifically enforce it."[32] However, a showing of the defendant's "detrimental reliance . . . might bind the government to the plea agreement before entry of the plea."[33] In

---

[27] Opp'n 11.
[28] *Id.* at 11–12.
[29] *Novosel*, 481 F.3d at 1292 (quoting *United States v. Wood*, 378 F.3d 342, 348 (4th Cir. 2004)
[30] *Id.* (quoting *Mabry v. Johnson*, 467 U.S. 504, 507 (1984)); *see United States v. Gonzalez*, 918 F.2d 1129, 1133 (3d Cir. 1990) ("It is axiomatic that a plea agreement is neither binding nor enforceable until it is accepted in open court.").
[31] *Novosel*, 481 F.3d at 1292 (quoting *United States v. Floyd*, 1 F.3d 867, 870 (9th Cir. 1993)).
[32] *Id.* at 1293 (citing *Mabry*, 467 U.S. at 511).
[33] *Id.* at 1294; *see United States v. Smith*, 978 F.2d 1268 (10th Cir. 1992).

short, even though the parties reached a plea agreement,[34] binding case law nevertheless requires the conclusion that the agreement was unenforceable until Mr. Baker entered a guilty plea, something which he has not done, unless Mr. Baker shows detrimental reliance which "might bind the government."[35]

In his motion, Mr. Baker points to his filing of a Waiver of Speedy Trial Rights on March 6, 2023, as the required detrimental reliance.[36] He cites three cases in support.

In *Santobello v. New York*, the prosecutor agreed that in exchange for defendant's guilty plea, the government would make no sentencing recommendation.[37] The defendant then pleaded guilty.[38] At the sentencing hearing, a different prosecutor violated the agreement by arguing for a sentence at the statutory maximum.[39] The Supreme Court found that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."[40] In contrast, Mr. Baker has not entered any guilty plea. A jury convicted him on two counts. He successfully severed two other counts to which he has pleaded not guilty. Because there is no induced guilty plea here, *Santobello* is factually inapposite.

In *United States v. Jensen*, the government promised to dismiss a particular count in the indictment, apparently because a needed witness was not available to testify at trial.[41] The government then failed to timely produce voluminous potentially exculpatory evidence,

---

[34] Mr. Baker requested a hearing "to allow the parties to present evidence of the meeting of the minds of the parties." Mot. to Enforce Plea Agreement 4. The undisputed evidence cited in the parties' motions is sufficient for the court to find that there was a plea agreement. Accordingly, a hearing to determine whether an agreement existed would not be helpful.
[35] *Novosel*, 481 F.3d at 1294.
[36] Mot. to Enforce Plea Agreement 3.
[37] 404 U.S. 257 (1971).
[38] *Id.* at 258.
[39] *Id.* at 259.
[40] *Id.* at 262.
[41] 996 F. Supp. 2d 1151, 1152 (D. Utah 2014).

including several video tapes, multiple audio recordings, and various documents.[42] This resulted in a trial continuance.[43] As a result of the delay it had caused, the government was able to secure the witness it needed to support the count it earlier had promised to dismiss and then informed the defendant and the court it would no longer follow through on its earlier commitment to dismiss the count in question.[44] The court found that the defendant "undoubtedly relied" on the prosecution's promise to his detriment because he stopped preparing his defense on the issue and trial was only one week away.[45] Here, Mr. Baker's situation is very different. There is no failure by the government to produce key evidence impairing Mr. Baker's ability to prepare for an imminent trial. Instead, because Mr. Baker unilaterally informed the court that he would be entering a plea, his trial date was vacated. There is no discovery violation here and no impairment of Mr. Baker's ability to prepare for trial.

The final case cited by Mr. Baker is *United States v. Kuchinski*.[46] In *Kuchinski*, the defendant argued that the government was bound by its plea agreement with him.[47] The Ninth Circuit disagreed, finding that:

> Had the district court already accepted the plea agreement, the government could not have easily withdrawn from it. But here the district court had not yet accepted it and '[a] plea agreement that has not been entered and accepted by the trial court does not bind the parties. We recognize that where detrimental reliance is shown, the government may be bound even before the district court accepts the agreement, but no detrimental reliance appears here.[48]

---

[42] *Id.* at 1153.
[43] *Id.*
[44] *Id.*
[45] *Id.* at 1154.
[46] 469 F.3d 853, 857 (9th Cir. 2006) ("Kuchinski insists that once the government entered into a plea agreement, it was absolutely bound to the agreement's terms, even before the district court accepted the agreement. He is wrong. . . . We recognize that where detrimental reliance is shown, the government may be bound even before the district court accepts the agreement, but no detrimental reliance appears here.").
[47] *Id.*
[48] *Id.* at 857–58.

In short, *Kuchinski*, like the Tenth Circuit's binding decision in *Novosel*, merely states the rule that before the defendant actually pleads guilty and the guilty plea is accepted by the court, the plea agreement is not binding unless the defendant shows detrimental reliance.

Mr. Baker has not cited any case in which a court found that a defendant's waiver of his Speedy Trial rights resulted in the kind of detrimental reliance that would force the government to stand by a plea agreement that has not been entered in court. The only such case this court found rejected the view.[49] Despite the lack of case law, this court believes that a defendant's waiver of Speedy Trial rights conceivably might result in detrimental reliance on the right record. Other courts have found that detrimental reliance requires the defendant to "prejudice h[is] position by relying upon the government's offer"[50] or to be placed in a "worse position,"[51] one "where restoration of the status quo ante would be impossible."[52] Other courts envision this concept as whether the prosecution gained an "unfair advantage."[53] However, Mr. Baker has not explained how he relied to his detriment *on the Government's acts or representations* or how the Government's acts or representations gave it an unfair advantage over him. Mr. Baker contends that the waiver "protected the Government from facing a Motion to Dismiss and/or from forcing

---

[49] *See United States v. Dodd-Gomez*, 526 F. Supp. 3d 986, 997 (D.N.M. 2021) ("Here, Defendant has set forth no authority which holds that waiver of one's speedy trial rights constitutes detrimental reliance. Accordingly, the motion for specific performance will be denied."). In *U.S. v. Smith*, the defendant raised this argument, but the court found that the waiver of his Speedy Trial Act rights was made in reliance of the possibility of a plea agreement, not in reliance of any promise of the government, and so it did not engage further the question of whether waiver of Speedy Trial Act rights may constitute detrimental reliance. *U.S. Smith*, No. 1:03-CR-86-TS, 2006 WL 978980, at *3 (N.D. Ind. 2006).
[50] *United States v. Molina-Iguado*, 894 F.2d 1452, 1456 (5th Cir. 1990); *see also United States v. Coon*, 805 F.2d 822, 825 (8th Cir. 1986); *United States v. McGovern*, 822 F.2d 739, 746 (8th Cir. 1987).
[51] *Mabry*, 467 U.S. at 511 n.11.
[52] *United States v. Kettering*, 861 F.2d 675, 679 (11th Cir. 1988); *see United States v. Streebing*, 987 F.2d 368, 373 (6th Cir. 1993) ("Consequently, defendant was in no worse a position at the time of trial than he was at any time prior to or after the interview, and as such, he suffered neither prejudice nor detrimental reliance."); *Gov't of Virgin Islands v. Scotland*, 614 F.2d 360, 365 (3d Cir. 1980).
[53] *See United States v. Norris*, 486 F.3d 1045, 1052–53 (8th Cir. 2007) ("We recognize exceptions to the general rule to the extent that the plea agreement specifically contemplates pre-plea performance or if the defendant shows that the Government has taken unfair advantage of its withdrawal from the agreement."); *Molina-Iguado*, 894 F.2d at 1456 (quoting *United States v. Ocanas*, 628 F.2d 353, 358 (5th Cir. 1980)).

8

them to meet their burden of proof without sufficient time to prepare for the second trial,"[54] an entirely speculative argument. Unlike *Jensen*, Mr. Baker does not point to any evidence to support these contentions.

Also, it is uncontroverted that the Government expressed concern about the Speedy Trial clock, but Speedy Trial issues are an area in which the Government has obligations. There is no evidence that the Government compelled Mr. Baker to file a waiver of Speedy Trial rights. Instead, it is not contested that the Government advised the defense that "we need to get him in front of a judge and either do the plea or don't, waive his [Speedy Trial Act] rights or don't."[55] Mr. Baker then prepared, signed, and later filed his Speedy Trial waiver.

In that filing, Mr. Baker expressly waived his Speedy Trial rights "voluntarily," and it is undisputed that the Government did not draft or sign the waiver. Mr. Baker notes that the Government asked that he inform the court that "the parties have reached a plea agreement," but the defense rejected the suggestion.[56] Importantly, the waiver only lasted "until such time as a plea agreement has been entered or a new demand for trial has been filed," meaning that Mr. Baker always retained the ability to restart the Speedy Trial clock simply by filing a demand. He could have chosen to do that on any given day based on the waiver he prepared and filed. But no such demand was ever made. Mr. Baker's detrimental reliance argument based on his voluntary Speedy Trial waiver fails.[57]

---

[54] Reply 5.
[55] Opp'n 4–5.
[56] Reply 2.
[57] Even if the Speedy Trial argument had merit, the appropriate remedy would not be enforcement of the plea agreement, but rather possible withdrawal of the Speedy Trial waiver.

In his reply, Mr. Baker raises new[58] detrimental reliance arguments regarding an incriminating admission and his unveiling of his defense to Counts 3 and 4 in his objections to the presentence report.[59] The "admission" is Mr. Baker's attorney's proffer that he would be admitting to a supervised release in another case, which he is concerned "could be used against him in his trial of Counts 3 and 4 [before this court]."[60] In *U.S. v. Norris*, the defendant argued that the Government might take unfair advantage of his sworn admission of guilt made during his uncompleted plea colloquy.[61] The court observed that his admission would be inadmissible in subsequent proceedings against the defendant in the Government's case-in-chief.[62] The court also noted that if the Government attempted to use an exception to admit the evidence, the defendant could argue at that point in time that it was an unfair advantage.[63] Here, Mr. Baker's "admission" is his proffered intention to admit to violating his supervised release. He does not specifically admit any facts; to the contrary, he states that he "disputes many of the facts." Unlike the defendant in *Norris*, Mr. Baker has not admitted to anything yet. And the purported defense disclosed in the objections to the presentence report was raised previously during these proceedings[64] and is not newly disclosed. The Government has not gained any advantage at all, much less an unfair one, based on the defense objections to the presentence report.

In short, the court cannot find that something the Government said or did caused Mr.

---

[58] Typically, courts do not permit new arguments in reply, since they deprive the opposing party of the opportunity to respond. *See In re: Motor Fuel Temperature Sales Pracs. Litig.*, 872 F.3d 1094, 1113 n.5 (10th Cir. 2017) (citing *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011).
[59] Reply 6.
[60] *Id*.
[61] *Norris*, 486 F.3d at 1050; *id.* at 1047 ("At the hearing, the district court placed Norris under oath and began the standard inquiry into Norris's competence to plead guilty. Norris stated that, at the time of the charged conduct, marijuana use had rendered him unable to understand that his actions violated the law. The district court voiced concern to Norris's counsel as to whether Norris would admit guilt to the offense. Norris stated 'Yeah, I did it ...' and equivocated briefly before stating that at the time he 'knew it was against the law.'").
[62] *Id.* (citing Fed. R. Evid. 410(a)(3)).
[63] *Id.*
[64] *See, e.g.*, July 8, 2022 Mot. for Review of Detention Hrg. Tr. 36:14–36:25.

Baker detriment or gave the Government an unfair advantage. Unlike most other cases where detrimental reliance was found, Mr. Baker did not confess guilt, testify for the government, or provide assistance to the government.[65] Instead, he voluntarily and temporarily tolled the Speedy Trial clock while the parties negotiated and before he entered his plea, something which he could have changed at any time by filing a demand. He also could have pleaded guilty, which would have resulted in the entry of his plea in open court and the acceptance of the plea by the two judges presiding over the cases involved.

Mr. Baker did neither. In the interim, the victim in this case advised the Government that Mr. Baker recently attempted to sway him to change his trial testimony, in the hopes that it would result in leniency at sentencing, in exchange for a favorable resolution of the civil dispute between the two. As a result, the Government now asserts its ability to withdraw from the agreement. It is a matter of prosecutorial discretion, not judicial mandate, whether Mr. Baker's alleged new conduct is best addressed at sentencing on the parties' plea agreement or whether the new allegations must prevent a plea from being entered and approved.

In conclusion, Mr. Baker has not demonstrated that he detrimentally relied on the Government or that it gained an unfair advantage by his voluntary waiver of a speedy trial on Counts 3 and 4 or his stated intention to admit guilt and his summary reference to a previously disclosed defense.

---

[65] *Villa-Vazquez*, 536 F.3d at 1200 ("It is enough to say that in general a defendant, by entering an accepted guilty plea, sufficiently relies to his detriment on a plea agreement that the government is bound by its promises in the agreement, at least until the agreement is set aside."); *United States v. Minnesota Min. & Mfg. Co.*, 551 F.2d 1106, 1110 (8th Cir. 1977) (upholding district court's decision to enjoin government from prosecuting defendants after it induced defendants to plead guilty to certain crimes with the understanding that their compliance would be fully dispositive of all federal charges against company and its officials); *Rowe v. Griffin*, 676 F.2d 524, 526 (11th Cir. 1982) (upholding injunction where state promised informer immunity in exchange for his testimony and then attempted to prosecute him, when his testimony was directly related to subsequent prosecution against him); *United States v. Sanderson*, 498 F. Supp. 273, 275 (M.D. Fla. 1980) (dismissing indictment against defendant when defendant had agreed to cooperate and provide testimony in exchange for immunity and did provide such information and testimony).

**ORDER**

IT IS HEREBY ORDERED that Defendant's Motion to Enforce Plea Agreement is DENIED.

Signed June 2, 2023.

BY THE COURT

_____
David Barlow
United States District Judge