THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW AMBROSE BAKER,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING [341] DEFENDANT'S MOTION TO DISMISS COUNT 3**<br><br>Case No. 2:20-cr-00301-DBB<br><br>District Judge David Barlow |

On October 4, 2023, Mr. Matthew Baker filed a Motion to Dismiss Count 3[1] of his Superseding Indictment, charging him with contempt under 18 U.S.C. § 401(3).[2] The gist of Mr. Baker's Motion is that the executive branch of the United States government may not prosecute him under Section 401 without the court first initiating such a prosecution. For the following reasons, the court denies Mr. Baker's Motion.

BACKGROUND

On September 9, 2020, Mr. Baker was indicted by a grand jury and charged with two counts of Wire Fraud.[3] Mr. Baker was released from custody pursuant to a court order, signed by Magistrate Judge Cecilia Romero.[4] Given the allegations of wire fraud, one of the conditions of release was that Mr. Baker "must not create any new business entities or transfer substantial assets over $1,500, unless approved by" the United States Probation Office.[5]

---

[1] Def.'s Mot. to Dismiss Count 3 ("Def.'s Mot.), ECF No. 341.
[2] Superseding Indictment 5–6, ECF No. 115.
[3] Sealed Indictment, ECF No. 1; *see also* ECF No. 6 (unsealing the Indictment).
[4] Order Setting Conditions of Release ("Order"), ECF No. 23.
[5] *Id.* at 3.

1

According to the United States, Mr. Baker violated this Order. On August 10, 2022, a federal grand jury issued a Superseding Indictment alleging that on six instances after Judge Romero's Order, Mr. Baker transferred assets in excess of $1,500 without approval.[6] By making these transfers in violation of a court order, the government alleges, Mr. Baker committed criminal contempt under 18 U.S.C. § 401(3).[7]

On October 4, 2023, Mr. Baker filed the present Motion to Dismiss,[8] and the government filed its opposition on October 20.[9] The court heard argument on the Motion on November 6.

## ANALYSIS

In the present Motion and in a separate Motion incorporated by reference,[10] Mr. Baker argues that the text and history of 18 U.S.C. § 401, and related statutes and rules, suggest that only courts may initiate contempt prosecutions. The government responds primarily by emphasizing that the statutory text does not actually support Mr. Baker's argument, and that Article II of the U.S. Constitution and statutory authority establish the executive branch's ability to prosecute crimes.[11]

### A. The Executive's Authority to Prosecute

Because Mr. Baker's argument is that the executive branch lacks the statutory authority to prosecute him absent a request from the court, the court begins with a brief overview of the

---

[6] Superseding Indictment at 6 (individual assets ranging from $2,000 to $600,000).
[7] *Id.* at 5–6.
[8] Def.'s Mot.
[9] United States' Opp'n to Mot. to Dismiss Count 3 ("Gov.'s Opp'n"), ECF. No. 359.
[10] *See* ECF No. 341-1 ("Def.'s Incorporated Motion," "Gov.'s Incorporated Opp'n," or "Def.'s Incorporated Reply").
[11] Gov.'s Opp'n 4–5.

sources that establish the power to prosecute generally and the procedures that typically govern the initiation of a prosecution.

Article II of the U.S. Constitution vests the power to execute the laws in the executive branch, which includes the power to prosecute crimes within the jurisdiction of the United States.[12] Congress has authorized the appointment of United States attorneys and assistant United States attorneys in order to facilitate enforcement of federal criminal laws.[13] 28 U.S.C. § 547 reads: "Except as otherwise provided by law, each United States attorney . . . shall—(1) prosecute all offenses against the United States."[14] The word "offense" appears innumerable times in Title 18 and Title 28 but is nowhere defined in a way that would aid resolution of this issue.[15] The plain meaning of "offense" is "an infraction of law,"[16] or "an illegal act or omission; a punishable crime."[17] In addition, nearly every substantive provision of Title 18 proscribes certain conduct by stating that such conduct could lead to punishment by a "fine or imprisonment, or both."[18]

The procedure to initiate a criminal prosecution depends on the type of crime. For felonies, the Fifth Amendment requires an indictment by a grand jury before a prosecution may

---

[12] *See* U.S. Const. art. II; *United States v. Nixon*, 418 U.S. 683, 694 (1974) ("Under the authority of [Article II], Congress has vested in the Attorney General the power to conduct the criminal litigation of the United States Government.").
[13] 28 U.S.C. §§ 541, 542, 547; *see also The Confiscation Cases*, 74 U.S. 454, 457 (1868) ("Public prosecutions . . . are within the exclusive direction of the district attorney.").
[14] 28 U.S.C. § 547(1).
[15] *Cf.* 18 U.S.C. § 19 (defining "petty offense"); *id* § 3172 (defining "offense" for purposes of the Speedy Trial Act); *id.* § 3156 (defining "offense" for purposes of pretrial release statutes).
[16] *Offense*, Merriam-Webster, https://www.merriam-webster.com/dictionary/offense [https://perma.cc/4WVJ-G58B].
[17] *Offense*, Oxford English Dictionary, https://www.oed.com/dictionary/offence_n?tab=meaning_and_use&tl=true#33836185 [https://perma.cc/7TWD-VE66].
[18] *See, e.g.*, 18 U.S.C. § 81 (arson); *id.* § 201 (bribery of a public official); *id.* § 38 (fraud involving aircraft); *id.* § 113 (assaults).

commence.[19] This procedure has been codified in the Federal Rules of Criminal Procedure: "An offense (other than criminal contempt) must be prosecuted by an indictment if it is punishable: (A) by death; or (B) by imprisonment for more than one year."[20] And because the Fifth Amendment only requires a grand jury indictment for felonies, the Federal Rules permit prosecution for a misdemeanor or petty offense to be commenced by "indictment, information, or complaint, or "citation or violation notice."[21]

Having briefly outlined the executive's authority and the procedure for charging crimes generally, the court turns to whether contempt prosecutions must be handled differently than other crimes.

### B. Contempt

Mr. Baker raises a host of arguments in an effort to show that contempt is different from other crimes. First, he argues that the text, history, and purpose of 18 U.S.C. § 401 show that contempt prosecutions must be initiated by federal courts.[22] Next, he suggests that Rule 42 of the Federal Rules of Criminal Procedure outlines the exclusive procedure for a court to punish contempt.[23] And finally, he argues that other provisions, including the Federal Magistrate Act and the pretrial release statute confirm that only courts may punish contempt.[24]

---

[19] U.S. Const. am. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."); *see Mackin v. United States*, 117 U.S. 348, 354 (1886) ("'Infamous crimes' are thus, in the most explicit words, defined to be those 'punishable by imprisonment in the penitentiary.'"); *Stirone v. United States*, 361 U.S. 212, 215 (1960) ("The crime charged here is a felony and the Fifth Amendment requires that prosecution be begun by indictment").
[20] Fed. R. Crim. P. 7(a)(1).
[21] Fed. R. Crim. P. 58(b).
[22] Def.'s Incorporated Mot. 2–8.
[23] Def.'s Mot. 6–7.
[24] *Id.* at 2–6.

### 1. Section 401 and Rule 42

The court begins with the text of the statute proscribing contempt. 18 U.S.C. § 401(3) reads:

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—
>
> . . .
>
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.[25]

Unlike for other crimes, the Federal Rules of Criminal Procedure do not require that a contempt proceeding be initiated by a grand jury indictment. Rule 42 of the Federal Rules of Criminal Procedure makes clear that a contempt occurring outside the presence of the court "may be punished . . . after prosecution on notice," which requires that the court give notice and request government prosecution.[26] In addition, Rule 42 states that "the court . . . may summarily punish" contemptuous conduct occurring in the presence of the court.[27] In other words, Rule 42 codifies the procedure a court must follow if it seeks to initiate a contempt prosecution or punish contempt summarily.[28] Likewise, Rule 7 establishes that contempt is an exception to the general rule requiring prosecution by indictment for felonies.[29] However, as explained below, Rule 42 is permissive; it does not mandate that courts initiate contempt proceedings. These Rules comport with Supreme Court precedent. In *Green v. United States*, the Supreme Court held that criminal

---

[25] 18 U.S.C. § 401(3).
[26] Fed. R. Crim. P. 42(a).
[27] Fed. R. Crim. P. 42(b).
[28] As the 1944 Advisory Committee Note to Subdivision (a) makes clear: "This rule is substantially a restatement of existing law." (citing *Ex parte Terry*, 128 U.S. 289 (1888); *Cooke v. United States*, 267 U.S. 517, 534–37 (1925)).
[29] Fed. R. Crim. P. 7(a)(1). It should be observed that contempt may be considered a felony, depending on the type of punishment imposed. *See Bloom v. Illinois*, 391 U.S. 194, 198 (1968) ("[C]riminal contempt is a petty offense unless the punishment makes it a serious one."); *see also Frank v. United States*, 395 U.S. 147, 149–50 (1969).

5

contempt "need not be prosecuted by indictment under the Fifth Amendment."[30] And the Supreme Court has long upheld summary contempt,[31] while at the same time mandating different procedures depending on whether contempt was committed in or outside the presence of the court.[32]

The court next addresses Mr. Baker's textual, historical, and purposivist arguments in turn.

*Text*

Mr. Baker argues that by specifying in Section 401 that "the court" has the power to punish contempt, Congress intended to exclude this power from all other governmental actors.[33] But as commentators have pointed out, the negative implication canon "properly applies only when [the thing specified] can reasonably be thought to be an expression of all that shares in the grant or prohibition involved. Common sense often suggests when this is or is not so."[34] Mr. Baker's negative implication argument must overcome the executive's power to prosecute "offenses against the United States."

If contempt is an "offense against the United States" for purposes of 28 U.S.C. § 547,[35] then common sense dictates that by specifying that "[a] court . . . shall have power to punish" contempts, Congress did not narrow the executive's general prosecutorial power. For starters,

---

[30] 356 U.S. 165, 187 (1958).
[31] *See Bloom*, 391 U.S. at 203–06 (collecting cases).
[32] *Id.* at 204 ("Before the 19th century was out, a distinction had been carefully drawn between contempts occurring within the view of the court, for which a hearing and formal presentation of evidence were dispensed with, and all other contempts where more normal adversary procedures were required.").
[33] Def.'s Incorporated Mot. 3. Mr. Baker also points out that unlike nearly all other provisions in Title 18, Section 401 is written in active voice, rather than passive voice; it identifies who has the power to punish conduct, rather than simply defining a crime. This merely restates Mr. Baker's negative implication argument.
[34] Antonin Scalia & Bryan A Garner, Reading Law: The Interpretation of Legal Texts 107 (2012).
[35] *Cf. Pendergast v. United States*, 317 U.S. 412, 417 (1943) (holding that contempt is an offense against the United States for purposes of the general statute of limitations).

contempt—like all other crimes listed in Title 18—is punishable "by fine or imprisonment or both."[36] Indeed, the Supreme Court has described contempt as being an offense: "Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both."[37] Thus, it is an "offense," within the plain meaning of that word.

Mr. Baker argues that contempt is not committed "against the United States," but instead, is committed against federal courts.[38] But by virtue of being a defined federal crime, contempt is committed against the United States. Additionally, Mr. Baker's proposed distinction between a federal court and the United States is unpersuasive in this context. This court is the United States District Court for the District of Utah. It is an institution of the United States, not some separate entity. The Supreme Court has stated that "the role of criminal contempt and that of many ordinary criminal laws seem identical—protection of the institutions of our government and enforcement of their mandates."[39] Therefore, because contempt is an "offense against the United States," 28 U.S.C. § 547 gives the power to United States attorneys to prosecute it.[40] In sum, Mr. Baker's negative implication argument is not supported.

---

[36] 18 U.S.C. § 401.
[37] *Bloom*, 391 U.S. at 201.
[38] Def.'s Incorporated Reply 1–2.
[39] *Bloom*, 391 U.S. at 202; *see also Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 804 (1987) (holding that "attorneys appointed to prosecute a criminal contempt action represent the United States"); *United States v. Providence Journal Co.*, 485 U.S. 693, 700 (1988) (holding that for purposes of the statute establishing who may argue suits on behalf of the United States before the Supreme Court criminal contempt cases are ones "in which the United States is interested").
[40] The government also suggests that by placing contempt in Title 18—itself titled "Crimes and Criminal Procedure"—in 1948, *see* Pub. L. No. 80-772, 62 Stat. 683, 701 (1948), Congress intended that contempt be treated as a crime, and like all crimes, prosecution may commence from a grand jury indictment. It is true that in some circumstances the location of a statute within a code can serve as an indicator of meaning. *See Kansas v. Hendricks*, 521 U.S. 346, 361 (1997) (holding that placement of a statute within the probate code, rather than the criminal code, was evidence of the statute being civil rather than criminal in nature); *cf. United States v. Welden*, 377 U.S. 95, 98 n.4 (1964) (noting that changes made by the codifier, and not Congress, should be given no weight); *INS v. Nat'l Cntr. For Immigrants' Rights, Inc.*, 502 U.S. 551, 556 (1991) ("[T]he title of a statute or section can aid in resolving

In addition, as the government points out, there is a distinction between the power to "punish," and the power to initiate prosecutions.[41] Section 401 and Rule 42, read in harmony, outline two methods for a court to punish contemptuous conduct. If the contempt occurs within the presence of the court, the court may *punish* that contempt summarily. But if the contempt occurs outside the presence of the court and the court wants the offense prosecuted, the court must give notice and must request *prosecution*. If the court proceeds with the second route, the right to a trial by jury may attach.[42] Only after such a prosecution and conviction may the court *punish* the contempt. Thus, that Section 401 specifies that "the court shall have power to punish" does not clearly exclude other actors (here, a grand jury upon request of the United States Attorney) from initiating prosecution. In short, Mr. Baker's negative implication argument is further eroded by the particular power being granted by the statute. Section 401 and Rule 42 supplement Section 547; they do not supplant it.

For these reasons, Mr. Baker's arguments on the text of Section 401 are misplaced.

---

an ambiguity in the legislation's text."). In this case, that Congress itself codified Title 18, and included contempt therein, bolsters the court's conclusion that Section 401 by its plain text defines an offense.

[41] Gov.'s Opp'n 4. At the November 6 hearing, both parties acknowledged that they were aware of few, if any, cases prior to around 1970 that suggest that a prosecution for contempt was initiated by a grand jury indictment. The court observes that this in keeping with the historical development of contempt. Over the course of the 20th Century, the Supreme Court gradually extended greater procedural protections to criminal contempt proceedings. *See Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 444 (1911) ("[I]n proceedings for criminal contempt the defendant is presumed to be innocent, he must be proved to be guilty beyond a reasonable doubt, and cannot be compelled to testify against himself."); *Cooke v. United States*, 267 U.S. 517, 537 (1925) ("Due process of law, therefore, in the prosecution of contempt, except of that committed in open court, requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation. We think that this includes the assistance of counsel, if requested, and the right to call witnesses to give testimony."); *In re Oliver*, 333 U.S. 257, 258–78 (1948) (holding conviction for contempt by a judge who also sat as a single-person grand jury was a violation of procedural due process); *Bloom*, 391 U.S. at 207–08 (extending the right to a trial by jury to serious contempts). Prior to the advent of these procedural protections, there would have been no real need for an indictment followed by prosecution.

[42] *See Bloom*, 391 U.S. at 207–08.

*History*

In his briefs and during oral argument, Mr. Baker emphasizes the history of the contempt power. The power of courts to punish contempt was established by Section 17 of the Judiciary Act of 1789.[43] This Act "was intended to do no more than expressly attribute to the federal judiciary those powers to punish for contempt possessed by English courts at common law."[44] In 1831, in response to some courts abusing their contempt power,[45] Congress enacted a statute limiting courts' contempt powers to three circumstances: (1) "the misbehaviour of any person or persons in the presence of said courts, or so near thereto as to obstruct the administration of justice"; (2) "the misbehaviour of any of the officers of the said courts in their official transactions"; and (3) "the disobedience or resistance by any officer of the said courts, party, juror, witness, or any other person or persons, to any lawful writ, process, order, rule, decree, or command of the said courts."[46] The 1831 statute remains largely unchanged today. Mr. Baker argues that this history suggests that because Congress meant to curtail the contempt power, not to expand it, prosecution of contempt may not be initiated by the executive branch.[47] But this history only suggests Congress sought to curtail *courts'* use of contempt proceedings[48]; it says nothing about either the *executive's* or the *grand jury's* power.

---

[43] Pub. L. No. 1-20, § 17, 1 Stat. 73, 83 (1789) ("[A]ll the said courts of the United States shall have power . . . to punish by fine or imprisonment, at the discretion of said courts, all contempt of authority in any cause or hearing before the same.").
[44] *Green*, 356 U.S. at 170.
[45] *See Bloom*, 391 U.S. at 202–03 (outlining the history of federal courts' contempt powers).
[46] Pub. L. No. 21-99, § 1, 4 Stat. 487, 487–488 (1831).
[47] Def.'s Incorporated Mot. 7.
[48] *See Bloom*, 391 U.S. at 207 (noting that "courts and legislatures have gradually eroded the power of judges to try contempt of their own authority").

The common law notwithstanding, there is nothing in the text of Section 401 that suggests that a grand jury may not indict for criminal contempt. To remove such a power from the grand jury and the executive branch and place it in the judiciary alone would seem to require more than merely an absence of a history of grand jury indictment.[49]

Mr. Baker's other historical arguments are likewise without merit. He argues that "Contempt was historically used to punish disobedience; it did not constitute a separate crime."[50] Additionally, in his briefs and at the November 6 hearing, Mr. Baker emphasized that courts have repeated the statement that "criminal contempt is best categorized as a *sui generis* offense," that is neither a felony nor a misdemeanor.[51] From this, Mr. Baker suggests that contempt is historically exceptional, and therefore, cannot be prosecuted following a grand jury indictment. But regardless of whether that is true historically, since the late 1960s, the Supreme Court has been clear that "[c]riminal contempt is a crime in the ordinary sense."[52] What makes contempt unusual is that the prosecution of it *may* be directly initiated by courts, something which is extraordinary because that power is nearly exclusively the province of the executive branch. Therefore, Mr. Baker's historical arguments are unpersuasive.

---

[49] *Cf., e.g.*, *West Virginia v. EPA*, 597 U.S. ---, 142 S. Ct. 2587, 2609 (2022) (noting that separation of powers concerns require a clear statement in some cases); *United States v. Williams*, 504 U.S. 36, 47 (1992) ("[The grand jury] has not been textually assigned . . . to any of the three branches [of government]. It '"is a constitutional fixture in its own right."'" (quoting *United States v. Chanen*, 549 F.2d 1306, 1312 (9th Cir. 1977))).
[50] Def.'s Mot. 7.
[51] *E.g.*, *United States v. Cohn*, 586 F.3d 844, 848 (11th Cir. 2009); *accord Cheff v. Schnackenberg*, 384 U.S. 373, 380 (1966); *see also Sui Generis*, Black's Law Dictionary (11th ed. 2019) ("Of its own kind or class; unique or peculiar.").
[52] *Bloom*, 391 U.S. at 201.

*Purpose*

Mr. Baker argues that to permit the executive branch to prosecute him for contempt without the court initiating the prosecution itself would be to deprive federal courts of one of their core powers.[53] Not so. Of course, the contempt power is "essential to the preservation of order in judicial proceedings,"[54] and of course contempt is a means by which a court may "vindicate its own authority without complete dependence on other Branches" of government.[55] But the court itself may still summarily punish certain contempts, and may initiate prosecution under Rule 42 and appoint a private prosecutor to prosecute if the executive branch is unwilling or unable to do so. Indeed, a similar argument was once made with regard to whether a jury was required for contempt prosecutions,[56] and the Supreme Court ultimately rejected this line of reasoning.[57] That both the executive and the judicial branches have power to initiate prosecution of contempt does not diminish the court's authority.

*Rule 42*

Finally, Mr. Baker's arguments on the text of Rule 42[58] are unpersuasive. The text of both Rule 42 and Rule 7 is permissive. Rule 42 states that "criminal contempt *may* be punished

---

[53] Def.'s Incorporated Mot. 7; Def.'s Incorporated Reply 7.
[54] *Ex parte Robinson*, 86 U.S. 505, 510 (1873).
[55] *Young*, 481 U.S. at 796.
[56] *See In re Debs*, 158 U.S. 564, 594–95 (1895) ("[T]he power of a court to make an order carries with it the equal power to punish for a disobedience of that order, and the inquiry as to the question of disobedience has been, from time immemorial, the special function of the court. . . . To submit the question of disobedience to another tribunal, be it a jury or another court, would operate to deprive the proceeding of half its efficiency.").
[57] *See Bloom*, 391 U.S. at 208–09 ("We place little credence in the notion that the independence of the judiciary hangs on the power to try contempts summarily . . . .").
[58] Def.'s Mot. 6–7; Def.'s Incorporated Mot. 5–6.

11

. . . after prosecution on notice" [59]; it does not say "must," as Mr. Baker seems to suggest.[60] In other words, the text of Rule 42 suggests that there are other routes to punishment, aside from prosecution on notice. Rule 42 simply states that if the court seeks to punish contempt, it is bound by the procedure established by Rule 42. Likewise, while Rule 7 carves out an exception for contempt from the requirement that an indictment be issued for felony offenses,[61] it does not suggest that a grand jury indictment cannot be issued for contempt. And while, as noted above, the Supreme Court in *Green* upheld a felony contempt prosecution that was instituted under Rule 42, rather than by grand jury indictment,[62] nothing in *Green*, or any subsequent Supreme Court case for that matter, suggests that Section 401 or Rule 42 removed contempt from the province of the grand jury. Therefore, nothing in the Federal Rules of Criminal Procedure alters the court's reading of Section 401.

In sum, the text, history, and purpose of Section 401 do not suggest that courts possess the exclusive power to initiate contempt prosecutions. Mr. Baker essentially asks the court to read Section 401 as: "A court of the United States shall have [the exclusive] power to [initiate contempt proceedings]." In order to remove such a power from the executive branch, the court would have to read the phrase "exclusive" into the statute, based only on the language that a "court . . . shall have power to punish [contempt]." And this the court cannot do. Just as

---

[59] *See* Fed. R. Crim. P. 42(a) ("Any person who commits criminal contempt *may* be punished for that contempt after prosecution on notice.").
[60] And to the extent that Mr. Baker suggests that Rule 42 is evidence of the will of Congress, *see* Def.'s Incorporated Mot. 5, that is simply incorrect. Rule 42 was promulgated according to the delegated rule-making power of the Supreme Court, *see* 55 Stat. 779 (1941). There is nothing in the history of Rule 42 that suggests that Congress had any hand in drafting Rule 42. Therefore, the court cannot read Rule 42 as doing anything but establishing "the procedure for *providing notice* of criminal contempt," *Young*, 481 U.S. at 794, when the court itself seeks to initiate non-summary contempt proceedings.
[61] Fed. R. Crim. P. 7 ("An offense (other than criminal contempt) must be prosecuted by an indictment if it is punishable: (A) by death; or (B) by imprisonment for more than one year.").
[62] *Green*, 356 U.S. at 187.

prosecution of contempt is not "an execution of the criminal law in which *only* the Executive Branch may engage,"[63] so too is it not a power left solely to the courts.

### 2. Other Provisions

Mr. Baker argues that 18 U.S.C. § 402, the Federal Magistrate Act, and the statutes governing pretrial release, bolster his argument that contempt is exclusively a judicial power. These arguments are unavailing.

18 U.S.C. § 402 is titled "Contempts constituting crimes." Mr. Baker focuses on this title and argues that Section 402 means that Section 401 cannot define criminal conduct.[64] But this argument fails to take account of the text of Section 402:

> Any person . . . willfully disobeying any lawful [order] of any district court of the United States . . . if the act or thing done be of such character as to constitute *also a criminal offense* under any statute of the United States . . . shall be prosecuted for such contempt as provided in section 3691 of this title and shall be punished by a fine under this title or imprisonment, or both.[65]

In other words, Section 402 does not mean that contempt under Section 401 is not a "crime" that may be punished by the executive branch. Instead, it simply defines a separate crime of contempt that involves conduct that is *also* a crime. Or, as the Ninth Circuit put it: "Section 402 refers to contemptuous acts which, besides being contemptuous, are also violations of federal criminal laws. The section does not state exclusive grounds for criminal contempt and thus does not foreclose Section 401 from giving rise to criminal liability."[66] Therefore, Section 402 does nothing to alter the court's reading of Section 401.

---

[63] *Young*, 481 U.S. at 800.
[64] Def.'s Incorporated Reply 3.
[65] 18 U.S.C. § 402.
[66] *Steinert v. U.S. Dist. Ct. for Dist. of Nev.*, 543 F.2d 69, 70 (9th Cir. 1976).

Next, Mr. Baker argues that since his contempt charge stems from an alleged violation of his pretrial release conditions, it may not be prosecuted by the executive branch, given the text of the pretrial release statute.[67] 18 U.S.C. § 3148 reads:

> (a) Available sanctions. A person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court.
>
> (b) Revocation of Release. The attorney for the Government may initiate a proceeding for revocation of an order of release by filing a motion with the district court. A judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release. . . .
>
> (c) Prosecution for contempt. The judicial officer may commence a prosecution for contempt, under section 401 of this title, if the person has violated a condition of release.[68]

According to Mr. Baker, because subsection (b) and subsection (c) each specify who may take certain actions, the executive branch is powerless to initiate a contempt prosecution for a pretrial release violation.[69] But as with Section 401, nothing in Section 3148 establishes that a prosecution for contempt may not be commenced through a grand jury indictment. Instead, Section 3148(c) merely clarifies that contempt is an available sanction for a violation of a condition of pretrial release, and that a "judicial officer" may commence such a prosecution. The language used is not exclusive: "a judicial officer may commence a prosecution," not "*only* a judicial officer may commence a prosecution."

Finally, Mr. Baker argues that the Federal Magistrate Act requires that the judiciary initiate contempt proceedings.[70] 28 U.S.C. § 636(e) governs magistrate judge's contempt

---

[67] Def.'s Mot. 5–6.
[68] 18 U.S.C. § 3148.
[69] Def.'s Mot. 5–6.
[70] *Id.* at 2–4.

authority. That provision permits magistrate judges to punish contempt summarily,[71] or, as pertinent here, when a magistrate hears an issue regarding pretrial release or detention under Section 636(a), and "the act that constitutes a criminal contempt occurs outside the presence of the magistrate judge," the magistrate judge must certify the issue to the district judge.[72]

Mr. Baker contends that this process was not followed here.[73] But that is irrelevant. Section 636(e) does not set forth the procedures that must be followed if the contempt stems from a magistrate judge's order; it only sets forth the procedures that must be followed if the magistrate judge seeks to hold a defendant in contempt. This is made clear by subsection (e)(1): "A United States magistrate judge serving under this chapter shall have . . . the power to exercise contempt authority as set forth in this subsection."[74] The statute has nothing to say about whether any other actor may initiate a contempt prosecution for the violation of a magistrate judge's order.

Relatedly, Mr. Baker argues that because federal magistrate judges had not been created when the original version of Section 401 was enacted, Section 401 only refers to contemptuous acts in violation of Article III judge's orders.[75] Thus, according to Mr. Baker, even if the executive branch can prosecute violations of Section 401, it cannot do so here since the order at issue was a magistrate's order.[76] This argument is meritless. An order from a magistrate judge carries the force of an order from a district judge, so long as the magistrate had authority to issue

---

[71] 28 U.S.C. § 636(e)(2).
[72] *Id.* § 636(e)(6)(B).
[73] Def.'s Mot. 4.
[74] 28 U.S.C. § 636(e)(1).
[75] Def.'s Mot. 4.
[76] *Id.*

15

it.[77] By way of analogy, were an individual to commit contempt of an order issued by a district judge whose seat was created after the enactment of Section 401, the fact that the judge's seat was created after the passage of the statute does not deprive that judge of the power to hold persons in contempt. Contempt is a violation of a court's order; the position held by the individual judicial officer is of no moment. Therefore, that the position of magistrate judge had not yet been created when Section 401 was enacted does not limit the court's interpretation of Section 401 in any way.

In sum, none of the other statutes raised by Mr. Baker show that the government cannot prosecute him for contempt following an indictment by a grand jury.

3. Other Authority

Non-binding precedent is in accord.[78] Nearly every court to have considered the arguments made by Mr. Baker has rejected them. Several Circuits—including the Second,[79]

---

[77] *See* 28 U.S.C. § 636(a).

[78] Both parties have placed significant emphasis on dicta from the Supreme Court, especially in *Young*. Normally, this court is "bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements." *Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996). However, the Court's decision in *Young* contains a number of potentially conflicting statements, that parties could—and indeed, have, in this case—read in different ways. For example, Mr. Baker emphasizes the statement that "while the prosecution of in-court and out-of-court contempts must proceed in a different manner, they both proceed at the instigation of the court." *Young*, 481 U.S. at 799. On the other hand, the Government prefers the sentence that immediately follows: "[t]he fact that we have come to regard criminal contempt as 'a crime in the ordinary sense,' does not mean that prosecution of contempt must now be considered an execution of the criminal law *in which only the Executive Branch may engage*." *Id.* at 799–800 (cleaned up) (emphasis added). For its part, this court notes that the dueling quotes the parties cite are all taken from a section of the opinion where the Supreme Court is rejecting the claim "that the ability of courts to initiate contempt prosecutions is limited to summary punishment of in-court contempts that interfere with the judicial process." *Id.* at 798. Read in context, *Young* does not suggest, in dicta or otherwise, that the courts are the *only* branch with power to initiate contempt prosecutions.

[79] *United States v. Morales*, 566 F.2d 402, 404–06 (2d Cir. 1977) (upholding indictment for contempt and rejecting that Rule 42 was the exclusive pathway to punishment for contempt).

Fourth,[80] Fifth,[81] and the Ninth[82]—have upheld prosecution of contempt by grand jury indictment. Mr. Baker asserts that many of these cases did not thoroughly analyze the text of Section 401 or related provisions.[83] And while that may be true for some of the cases, it does not necessarily deprive these decisions of their persuasive value, especially given the court's independent analysis. That is particularly true given that Mr. Baker cites only one case in support of his Motion,[84] and that case is factually inapposite.

In *In re Amalgamated Meat Cutters*, the Eastern District of Wisconsin was faced with a motion to quash a subpoena duces tecum issued by a grand jury.[85] There, the National Labor Relations Board alleged that a local union was engaged in unlawful conduct and the district judge entered a preliminary injunction barring certain activity.[86] The Board later requested that the district judge institute a prosecution for criminal contempt; the judge referred the matter to the grand jury.[87] The union then filed a motion to quash a subpoena duces tecum directing it to produce records to the grand jury, arguing that the judge's order referring the issue to the grand jury defined the scope of the grand jury's inquiry.[88] In ruling on this latter issue, the court held that because the grand jury lacked independent authority to indict, the grand jury was limited by

---

[80] *United States v. Mensik*, 440 F.2d 1232, 1234 (4th Cir. 1971) (holding an indictment is permissible so long as the notice requirements of Rule 42 are satisfied).
[81] *United States v. Williams*, 622 F.2d 830, 837–39 (5th Cir. 1980) ("[Rule 42] does not purport to vest exclusive authority to initiate contempt charges in the courts. It is merely procedural."); *United States v. Leyva*, 513 F.2d 774, 777–79 (5th Cir. 1975).
[82] *See United States v. Mohsen*, 587 F.3d 1028, 1032 (9th Cir. 2009); *Steinert*, 43 F.2d at 70–71.
[83] Def.'s Incorporated Mot. 8–12.
[84] *See id.* at 11–12.
[85] 402 F.Supp. 725, 726 (E.D. Wisc. 1975).
[86] *Id.* at 726–27.
[87] *Id.*
[88] *Id.* at 727, 729.

the judge's order.[89] None of these features are present here, and the court does not find the case to be otherwise helpful.

In sum, Mr. Baker asks the court to read several statutes and rules as conferring the power to initiate contempt proceedings exclusively on federal courts, thereby limiting the executive branch's ability to pursue contempt crimes. But no statute or rule in fact does this. No statute, rule, or binding caselaw suggests that the ordinary procedure for initiating a prosecution—i.e., grand jury indictment—may not be followed for contempt. Instead, as the 2002 Advisory Committee Notes to Rule 7 make clear: "While indictment is not a required method of bringing felony criminal contempt charges, however, it is a permissible one."[90] In addition, the court observes that to adopt Mr. Baker's arguments would needlessly create a significant constitutional issue—whether Congress may categorically remove certain felonies from the scope of the grand jury clause in the Fifth Amendment. In other words, it is one thing to say that contempt "*need not* be prosecuted by indictment under the Fifth Amendment,"[91] and quite another to say that contempt *may not* be prosecuted by an indictment, and instead must be prosecuted pursuant to a court's request under Rule 42. Section 401 and Rule 42, and the host of other related provisions, merely authorize courts to initiate contempt prosecutions and establish certain procedures that must be followed if a court does so; they do not mandate that a court-initiated prosecution is the exclusive route.

---

[89] *Id.* at 736.
[90] Fed. R. Civ. P. 7, Advisory Committee Notes to 2002 Amendments.
[91] *Green*, 356 U.S. at 187 (emphasis added).

## ORDER

Accordingly, the Court DENIES Mr. Baker's Motion to Dismiss Count 3 of the Superseding Indictment.

Signed November 8, 2023.

BY THE COURT

David Barlow
United States District Judge