THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW AMBROSE BAKER,<br><br>Defendant. | **FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>Case No. 2:20-cr-00301-DBB<br><br>District Judge David Barlow |

On August 22, 2022, a federal grand jury in the District of Utah returned a four-count Superseding Indictment against Matthew Ambrose Baker.[1] Two counts remain unresolved: Count 3 of the Superseding Indictment alleges Mr. Baker committed contempt in violation of 18 U.S.C. § 401(3), and Count 4 alleges Mr. Baker possessed ammunition as a convicted felon in violation of 18 U.S.C. § 922(g)(1).[2] On October 13, 2023, Mr. Baker requested[3] a bench trial based on stipulated facts pursuant to Rule 23 of the Federal Rules of Criminal Procedure[4] and on October 18, the parties filed their stipulated facts and relevant exhibits.[5] Finally, on November 13, 2023, the court engaged in a colloquy with Mr. Baker to determine if his written waiver of a jury trial and related rights was knowing, intelligent, and voluntary; conducted a bench trial on

---

[1] Superseding Indictment, ECF No. 115.
[2] Superseding Indictment 5–7.
[3] *See* ECF No. 353.
[4] *See* Fed. R. Crim. P. 23(a), (c).
[5] ECF No. 358.

1

the two pending counts; and rendered its verdict in open court.[6] The court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

### A. Rule 23 Findings

1. Mr. Baker requested a bench trial based entirely on stipulated facts and exhibits on October 13, 2023.[7]

2. In his filing, Mr. Baker acknowledged that he understood that he was waiving the right to a jury trial.[8]

3. In addition, Mr. Baker signed the stipulated facts that were filed with the court.[9]

4. Prior to hearing closing arguments from the parties, the court engaged Mr. Baker in a colloquy to determine if his request to be tried by the court instead of a jury and to be tried on stipulated facts and exhibits was made knowingly, intelligently, and voluntarily.[10]

5. Mr. Baker acknowledged that he was waiving the right to a jury trial and other rights associated with electing to proceed on a stipulated record.[11]

6. Likewise, Mr. Baker acknowledged that he understood that his trial would be based upon stipulated facts and exhibits, that the court would also receive argument from counsel about the facts and the law, and that Mr. Baker had read the stipulated facts and reviewed

---

[6] *See* ECF No. 367.
[7] *See* ECF No. 353.
[8] Notice of Filing of Stipulated Facts, ECF No. 358.
[9] Stipulated Facts 7, ECF No. 358-1.
[10] *See* ECF No. 367.
[11] *See id.*

the exhibits.[12]

7. Based on this colloquy and the filings before the court, the court concluded that Mr. Baker made a written waiver of his right to a jury trial, and that he did so knowingly, intelligently, and voluntarily. Likewise, the court concluded that Mr. Baker's decision to be tried upon stipulated facts and exhibits was knowing, intelligent, and voluntary.[13]

8. After making this finding, the government consented to proceed with a bench trial based on stipulated facts, and the court approved.[14]

**B. Findings Based on Stipulated Facts**

Based on the stipulated facts and attached exhibits,[15] the court finds the following:

1. On September 23, 2020, a detention hearing was held in this case before Magistrate Judge Cecilia M. Romero. Mr. Baker was present during the hearing, along with his wife, and two sets of counsel.

2. On September 23, 2020, Magistrate Judge Romero issued an Order Setting Conditions of Release ("Order"). Mr. Baker signed the Order, acknowledging his conditions of release. The Order was never amended or modified by the Court. This Order was in effect from September 23, 2020 to March 30, 2022.

3. One of the specific conditions of release in the Order was that Mr. Baker must not transfer assets over $1,500, unless approved by United States Probation and Pretrial

---

[12] *See id.*
[13] *See id.*
[14] *See id.*
[15] The court repeats the stipulated facts verbatim. However, the court refers to Mr. Baker as "Mr. Baker," rather than "the Defendant." The exhibits were reviewed and considered by the court.

Services ("U.S. Probation").[16]

4. On or about October 1, 2020, Mr. Baker began his pretrial supervision in case number 2:20-cr-00301. The Order, and the conditions imposed, were reviewed with Mr. Baker when he began supervision. During a May 6, 2022 hearing, Mr. Baker testified that he asked questions of his supervision officer about the condition that he may not transfer assets over $1,500, unless approved by U.S. Probation. Specifically, Mr. Baker testified that he asked his supervision officer if regular monthly bills like a mortgage or attorney fees were "something that he [the officer] wanted or needed to be approved." Mr. Baker's supervision officer testified, in June 2022 that both he, and the prior supervision officer, instructed Mr. Baker on multiple occasions that Mr. Baker needed to contact them for any transfer in excess of $1,500.

5. In or around May 2021, Mr. Baker was served with a Writ of Execution signed by District Court Judge Darold McCade in Civil Case No. 200400334 in Utah County, Utah. The Writ notified Mr. Baker that the Utah County Sherriff was authorized to seize and sell the real property located at 1156 North Geneva Road in Provo, Utah to pay an outstanding judgment owed by Mr. Baker.

6. In or around June 23, 2021, Mr. Baker filed a Reply and Request for Hearing on the Writ of Execution in Civil Case No. 200400334, claiming that the real property located at 1156 North Geneva Road in Provo, Utah was exempt for seizure because he did not have any ownership interest in the real property and was only a trustee to the property because

---

[16] The Order itself reads: Mr. Baker "must not create any new business entities or transfer substantial assets over $1500, unless approved by" U.S. Probation. Order Setting Conditions of Release, ECF No. 358-3.

4

the property was held by the SMB Revocable Trust, to which Mr. Baker and his wife were trustees.

7. On July 7, 2021, Mr. Baker appeared in Utah County District Court in Civil Case No. 200400334 for a hearing. During that hearing, the court granted the Writ of Execution, finding that the real property located at 1156 North Geneva Road in Provo, Utah was an asset that could be seized and sold to pay the outstanding judgment owed by Mr. Baker.

8. On or about August 12, 2021, Mr. Baker, as trustee, transferred real property located at 1156 North Geneva Road in Provo, Utah, from the SMB Revocable Trust to a company owned by his wife, BAK1, LLC.

9. BAK1, LLC sold the real property located at 1156 North Geneva Road in Provo Utah, in February 2022 for approximately $330,000.

10. Mr. Baker did not request or obtain approval from Probation to transfer the real property located at 1156 North Geneva Road in Provo, Utah from the SMB Revocable Trust to Bak1, LLC. Mr. Baker did not request or obtain approval from U.S. Probation for the February 2022 sale of the real property. Mr. Baker did not report the transfer or sale of the real property to U.S. Probation.

11. On or about November 15, 2021, a check for $829,640.63 was issued by a trustee in a bankruptcy proceeding to Foxtrot United, care of Mr. Baker. Mr. Baker testified, during a hearing on May 6, 2022, that despite having transferred ownership of Foxtrot United to his wife in August 2021, he retained the right to the bankruptcy proceeds. The check was deposited into Foxtrot United bank account number XXXXX7000, located at Security Service Federal Credit Union. Mr. Baker controlled the Foxtrot United Bank Account.

12. On or about December 13, 2021, Mr. Baker authorized a wire transfer of $200,000 from the Foxtrot United Bank Account to one of his civil attorneys, Greg Hoole.

13. On or About December 21, 2021, Mr. Baker transferred $628,539.82 from the Foxtrot United Bank Account to his personal bank account number XXXXX2000, located at Security Service Federal Credit Union. Mr. Baker controlled this personal bank account.

14. On or about January 6, 2022, Mr. Baker issued check number 1025, which resulted in the transfer of $3,000 from his personal bank account to a third-party, SS Marine.

15. On or about January 12, 2022, Mr. Baker issued check number 1027, which resulted in the transfer of $10,000 from his personal bank account to Tango 305, an LLC whose registration with the State of Utah had expired. Mr. Baker controlled Tango 305 when the registration was active.

16. On or about January 12, 2022, Mr. Baker issued check number 1028, which resulted in the transfer of $2,000 from his personal bank account to a third-party company called BuildTec.

17. On February 3, 2022, Mr. Baker authorized a wire transfer that transferred $600,000 from his personal bank account to his wife's business LLC bank account at Alpine Credit Union.

18. Mr. Baker did not request approval from U.S. Probation for the transfers of funds described in paragraphs 12 and 14–17.

19. Prior to and after the transfers of funds from December 2021 through February 2022, U.S. Probation and Pretrial Services Officer Jacob King asked Mr. Baker on multiple occasions how he was surviving financially. Mr. Baker told Officer King that his wife's

dog breeding business and savings supported the family.

20. While not required under the special condition regarding the transfer of assets, Mr. Baker never informed U.S. Probation about any of the money received from the Foxtrot United bankruptcy proceeding, or any of the subsequent transfers of those funds as described in paragraphs 12 and 14–17.

21. On March 30, 2022, U.S. Probation officers executed a search at Mr. Baker's personal residence, located at 7825 S River Bottoms Road, in Spanish Fork, Utah. Officers recovered two types of ammunition from inside the home.

22. A box containing approximately 40 rounds of .38 Special ammunition was found in a dresser drawer in the master bedroom of Mr. Baker's home. The dresser drawer also contained one pair of underwear and socks, that appeared to the witnesses present to be men's clothing, and Lifestyle male condoms. No other adult males reside at the home.

23. Mr. Baker's Rolex watch was in the same dresser, in a drawer above where the ammunition was found. A large amount of cash, consisting primarily of $100 and $20 bills, was found in the drawer with the Rolex watch.

24. A box containing approximately 37 rounds of 9mm ammunition was recovered inside a duffel bag in a basement room of Mr. Baker's home in a closet. The door to the basement room was locked when officers arrived. Mr. Baker unlocked the room at the request of officers. The duffel bag was on a shelf inside the closet. The closet contained male clothing. The duffel bag also contained more than $80,000 in cash, consisting primarily of $100 and $20 bills.

25. During officers' search of Mr. Baker's home, Mr. Baker asked if officers were taking his

money, and then called them thieves.

26. Prior to and as of March 30, 2022, Mr. Baker was a felon in that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year (a felony).

27. Prior to and as of March 30, 2022, Mr. Baker knew that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year (a felony).

28. On November 17, 2022, a Special Agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives examined the ammunition recovered at Mr. Baker's residence. He determined that the 40 rounds of ammunition with the headstamp "FEDERAL 38 SPECIAL" was manufactured by Federal Cartridge in Anoka, Minnesota. He further determined that of the 37 rounds of 9mm ammunition with the headstamps that included "SPEER" or "LUGER," all but one round was manufactured by various companies in Minnesota, Connecticut, Arkansas, Idaho, Illinois or Mississippi. (That one round was undetermined.) Thus, of the 77 rounds of ammunition he analyzed, 76 rounds were manufactured and/or traveled outside the state of Utah. By virtue of those 76 rounds' presence in the state of Utah, the ammunition had traveled in and thereby was in and affecting interstate commerce.

## CONCLUSIONS OF LAW

### A. Count 3: Contempt

Count 3 of the Superseding Indictment charges Mr. Baker with contempt, in violation of 18 U.S.C. § 401(3). This statute states that "[a] court of the United States shall have power to punish by fine or imprisonment, or both . . . such contempt of its authority," including

"[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command."[17] The Tenth Circuit has not issued pattern jury instructions for contempt. Caselaw from the Tenth Circuit suggests that the elements of criminal contempt under 18 U.S.C. § 401(3) are: (1) a reasonably specific order; (2) the defendant had notice and actual knowledge of the order; (3) the defendant disobeyed the order; and (4) the defendant's disobedience of the order was willful.[18] "In the context of criminal contempt, willfulness is defined 'as a volitional act done by one who knows or reasonably should be aware that his conduct is wrongful.'"[19] The government must prove the elements of this count beyond a reasonable doubt.[20]

Based on the stipulated facts and the reasonable inferences therefrom, the court finds that the government has proven these elements beyond a reasonable doubt. Specifically, it finds: (1) that Judge Romero's Order was reasonably specific; (2) that Mr. Baker had notice and actual knowledge at all relevant times of the term of the Order requiring that he not transfer assets over $1,500 without approval from U.S. Probation; (3) that Mr. Baker disobeyed that term of the Order, and (4) that Mr. Baker's disobedience of that term of the Order was willful, in that he knew, or reasonably should have known that his conduct was a violation of the Order.

### B. Count 4: Felon in Possession

Count 4 of the Superseding Indictment is for an alleged violation of 18 U.S.C. § 922(g)(1). This statute makes it unlawful for any person "who has been convicted in any court

---

[17] 18 U.S.C. § 401(3).
[18] *United States v. Themy-Kotronakis*, 140 F.3d 858, 861 (10th Cir. 1998); *United States v. Voss*, 82 F.3d 1521, 1525, 1529–30 (10th Cir. 1996).
[19] *Themy-Kotronakis*, 140 F.3d at 864 (10th Cir. 1998) (quoting *United States v. Greyhound Corp.*, 508 F.2d 529, 531–32 (7th Cir. 1974)).
[20] *See Patterson v. New York*, 432 U.S. 197, 210 (1977) ("[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged.").

of, a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting [interstate] commerce, any firearm or ammunition."[21] The elements of a violation of 18 U.S.C. § 922(g)(1) are: (1) the defendant knowingly possessed a firearm or ammunition; (2) the defendant was previously convicted of a crime punishable by imprisonment for a term exceeding one year; (3) the defendant knew of his status as a convicted felon; and (4) the firearm or ammunition traveled in interstate commerce.[22]

There are two types of possession for purposes of 18 U.S.C. § 922(g)(1): actual possession and constructive possession.[23] "Actual possession exists when a person has direct physical control over a thing."[24] Constructive possession exists when a person, "although not in actual possession, knowingly has the power and intent at a given time to exercise dominion or control over an object, either directly or through another person or persons."[25] However, "joint occupancy alone cannot sustain" an inference of the defendant's power and intent to control an object.[26] Instead, to prove constructive possession in instances of joint occupancy, "the government must present direct or circumstantial evidence to show some connection or nexus individually linking the defendant" to the object.[27] In the context of Section 922(g)(1), this

---

[21] 18 U.S.C. § 922(g)(1).
[22] *See* Tenth Cir. Pattern Jury Instruction 2.44 (2021 ed., last updated July 14, 2023); *see also Rehaif v. United States*, 588 U.S. ---, 139 S. Ct. 2191, 2194 (2019) ("[T]he Government therefore must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status [as a convicted felon] when he possessed it."); *id.* at 2196 (noting that the mens rea did not extend to the jurisdictional element); *United States v. Urbano*, 563 F.3d 1150, 1155 (10th Cir. 2009) ("This court's precedent makes clear that § 922(g)(1) does not require an individual showing on an effect on interstate commerce so long as the firearm has traveled across state lines in the past.").
[23] *United States v. Little*, 829 F.3d 1177, 1181 (10th Cir. 2016).
[24] *Henderson v. United States*, 575 U.S. 622, 626 (2015).
[25] Tenth Cir. Pattern Jury Instruction 1.31 (2021 ed., last updated July 14, 2023); *accord Henderson*, 575 U.S. at 626; *Little*, 829 F.3d at 1182.
[26] *United States v. Bowen*, 437 F.3d 1009, 1015 (10th Cir. 2006).
[27] *Id.* (quoting *United States v. Valadez-Gallegos*, 162 F.3d 1256, 1262 (10th Cir. 1998)).

means that the government may prove "that the defendant had knowledge of and access to the firearm."[28] Again, the government must prove the elements of this count beyond a reasonable doubt.[29]

Based on the stipulated facts and the reasonable inferences therefrom, the court finds that the government has proven these elements beyond a reasonable doubt. Mr. Baker directly stipulated to the latter three elements.[30] And the court finds that the government has proven the first element—that Mr. Baker knowingly possessed ammunition—beyond a reasonable doubt.

## VERDICT

For the reasons set forth above, the court finds, beyond a reasonable doubt, Mr. Baker GUILTY of violating 18 U.S.C. § 401(3) and GUILTY of violating 18 U.S.C. § 922(g)(1).

Signed November 13, 2023.

BY THE COURT

David Barlow
United States District Judge

---

[28] *United States v. Shannon*, 809 Fed.Appx. 515, 518 (10th Cir. 2020) (quoting *United States v. Benford*, 875 F.3d 1007, 1015 (10th Cir. 2017)); *see also Little*, 829 F.3d at 1183.
[29] *See Patterson*, 432 U.S. at 210.
[30] Stipulated Facts ¶¶ 26–28.